**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 3, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES EARL COLLVINS, JR.,

      Plaintiff - Appellant,

v.

PETE C. HACKFORD; RICK
STURM,

      Defendants - Appellees.

No. 12-4014
(D.C. No. 2:10-CV-00346-TC)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **KELLY** and **LUCERO**, Circuit Judges.

---

Plaintiff-Appellee James Earl Collvins, Jr., a boiler inspector, filed a civil

rights complaint under 42 U.S.C. § 1983 against the division director of the Utah

Division of Boiler and Elevator Safety ("Division") and the Division's chief

boiler inspector. Mr. Collvins alleged, among other things, that the Division

suspended his certificate of competency ("certificate") in violation of his

procedural due process rights. Mr. Collvins appeals from the district court's

order holding that Defendants were entitled to qualified immunity. See Collvins

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

v. Hackford, 2011 WL 5508816, No. 2:10-CV-346 TC (D. Utah Nov. 9, 2011). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Background

Mr. Collvins worked as a licensed boiler inspector for over thirty years. App. 206. In order to work as a boiler inspector, Mr. Collvins was required to have a certificate of competency issued by the state (Utah) which in turn requires a commission issued by the National Board of Boiler and Pressure Vessel Inspectors ("national board"). Id. at 210, 213. Utah law authorizes the Division to issue certificates to boiler inspectors annually. Utah Code Ann. § 34A-7-103. At all relevant times, Defendant-Appellee Pete Hackford was the division director and Defendant-Appellee Rick Sturm was the chief boiler inspector. Id. at 209, 530.

In the fall of 2007, Mr. Collvins was working as a boiler inspector for the Hartford Steam Boiler Company ("Hartford") and held a Utah certificate and a national board commission. Id. at 619–20. In October, the Division learned that Mr. Collvins issued certificates of inspection and permits for two pressure vessels at Utah State University that had been removed from service years earlier. Id. at 535. During the course of Mr. Sturm's investigation of these complaints, he learned that in 2006 Mr. Collvins' certificate had been temporarily suspended and Hartford placed Mr. Collvins on a corrective action plan. Id. Mr. Sturm sent a

letter to Hartford notifying it of the recent problem and seeking its assistance in a similar corrective plan. Id. at 521–22, 536, 547, 893. The letter also warned that further problems would result in the suspension of Mr. Collvins' certificate. Id. at 893.

In November, the Davis County School District contacted the Division complaining that the permits and invoices Mr. Collvins submitted to them applied to vessels that no longer existed. Id. at 536. The Cache County School District made a similar complaint, alleging that a boiler at one high school had not yet been inspected that year. Id. at 537. During his investigation of these complaints, Mr. Sturm also learned that Mr. Collvins had issued a permit for a boiler in 2005 without properly inspecting it. Id.

On November 26, Mr. Sturm sent a letter to Hartford and Mr. Collvins suspending Mr. Collvins' certificate. Id. at 538, 895–96. On November 28, Mr. Collvins emailed the Division stating that he intended to appeal the suspension, and he sent a written request to appeal the following day. Id. at 228, 230. Two weeks later, however, Mr. Collvins went on disability while undergoing chemotherapy treatments, and he has remained on disability ever since. Id. at 340, 417. In the meantime, Mr. Sturm notified the national board of the suspension and requested a peer review. Id. at 220. The review was ultimately cancelled after the national board became aware that Mr. Collvins was on disability. Id. at 539.

Mr. Hackford was responsible for hearing Mr. Collvins' appeal, but nothing happened for months. Id. at 525–26. After learning that Mr. Collvins had been inspecting boilers while under the influence of various medications, Mr. Hackford recused himself. Id. at 526, 548. On May 19, 2008, the appeal was transferred to the Adjudication Division of the Labor Commission. Id. at 548–49. The Adjudication Division scheduled a pre-hearing conference in June, which was continued until July at the request of Mr. Collvins. Id. at 508. The hearing was finally held in October 2008. Id. at 506. In November, the ALJ decided the suspension was improper. Id. at 506–15. Because neither Mr. Collvins nor Hartford sought to renew his certificate for 2008, or reinstate his national commission, no certificate issued. Id. at 552–53, 629.

Mr. Collvins filed a complaint alleging that Mr. Hackford and Mr. Sturm violated his due process rights both by suspending his certificate before holding a hearing and by waiting too long to hold a post-suspension hearing. Id. at 9–19. The district court rejected these claims. Collvins, 2011 WL 5508816, at *9. The court determined that although Mr. Collvins had a property interest in his certificate and was therefore entitled to due process, (1) due process permitted the suspension without a pre-deprivation hearing due to legitimate safety concerns, and (2) the law was not clearly established that the delay in reviewing Mr. Collvin's appeal of the suspension was unconstitutional. Id. at *4–8.

- 4 -

This court reviews the grant of summary judgment de novo, applying the same standards as the district court. Salazar v. Butterball, LLC, 644 F.3d 1130, 1136 (10th Cir. 2011). Generally, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To defeat a defense of qualified immunity on summary judgment, however, the plaintiff carries the burden of establishing that the defendant violated a constitutional right which was clearly established. Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011). In order "for a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" Price-Cornelison v. Brooks, 524 F.3d 1103, 1108 (10th Cir. 2008). General propositions of law are insufficient. al-Kidd, 131 S. Ct. at 2084. This court may address the two-element analysis in either order and may affirm on either or both qualified immunity elements presented in the record. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

A.    Absence of Pre-deprivation Hearing

Assuming Mr. Collvins has a protected property interest in his license,[1] the

---

[1] Although Defendants initially conceded that Mr. Collvins had a protected property interest in his certificate, they no longer do. See, e.g., Aplee. Br. 18 n.3, 18; Oral Arg. at 16:09–17:08. We assume without deciding that Mr. Collvins has

court first considers whether Defendants were justified in not holding a pre-deprivation hearing.  The district court concluded that the undisputed evidence showed that legitimate safety concerns warranted the pre-hearing suspension of Mr. Collvins' certificate.  We agree.

Generally, the government may not deprive someone of a protected property right without first conducting "some sort of hearing."  Camuglia v. City of Albuquerque, 448 F.3d 1214, 1220 (10th Cir. 2006).  Due process, however, "is flexible and calls only for such procedural protections as the particular situation demands.'"  Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 334 (1976)).  For example, "[i]n matters of public health and safety, the Supreme Court has long recognized that the government must act quickly."  Id.  This court has found public health and safety reasons justified the lack of a pre-deprivation hearing where the government closed a restaurant for improper use of pesticides, see id., suspended an employee for errors causing a substantial budget deficit, Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J, 464 F.3d 1182, 1194 (10th Cir. 2006), quarantined animals suspected to have rabies, Clark v. City of Draper, 168 F.3d 1185, 1189–90 (10th Cir. 1999), and investigated a child care center for claims of abuse, Ward v. Anderson, 494 F.3d 929, 937 (10th Cir. 2007).  The safety concerns expressed in this case are similarly sufficient to justify the pre-

a protected property interest for the purpose of this appeal.

hearing deprivation of a property right.

Mr. Collvins' job was to inspect boilers in order to ensure public safety. Mr. Sturm, Mr. Hackford, and the General Counsel for the Utah Labor Commission, all provided sworn statements detailing safety concerns about his performance. App. 535–38, 687–88, 692–95. A leader of one of the school districts involved also expressed concern about the inspections. See Collvins, 2011 WL 5508816, at *1 n.3. Although unaware of Mr. Collvins' health at the time of the suspension, Defendants' concerns were heightened when Mr. Collvins later admitted that medical treatments he was receiving in the fall of 2007 left him "in a fog," "tired," lacking "concentration," and unable to tell where he was going. App. 683–84. Considering the repeated errors despite retraining opportunities, immediate suspension was warranted based upon public safety concerns.

Mr. Collvins suggests that issuing permits for scrapped boilers alone does not raise safety concerns or safety hazards, Aplt. Br. 22–24; App. 650. He attempts to show that Mr. Sturm viewed the mistakes as "paperwork error[s]" or "data entry" errors, and points to other inspectors who were counseled rather than suspended after making clerical errors. Aplt. Br. 25; App. 632–37, 649, 663. These facts, however, do not create a genuine issue of material fact given the objective and inherent safety concerns and evidence of Mr. Collvins' impairment. As the district court correctly noted, none of these facts preclude Mr. Sturm "from

having safety concerns because Mr. Collvins' inspections *as a whole* appeared to be unreliable." Collvins, 2011 WL 5508816, at *1 n.3 (emphasis added).

Mr. Collvins also argues that the safety rationale is pretextual, created for summary judgment purposes. Aplt. Br. 24 (citing App. 218–19). Although he argues that Mr. Sturm's suspension letter does not on its face raise any safety issues, it would not take a clairvoyant to grasp the obvious concern contained in the letter. Be that as it may, affidavits from the parties supporting the objective safety rationale are properly considered on summary judgment. See Aplt. Reply Br. 20; see also Fed. R. Civ. P. 56(c)(1)(A) (explaining that after-the-fact declarations, witness statements, and deposition testimony are routinely acceptable forms of evidence at summary judgment). Moreover, it does not matter whether, in reality, Mr. Collvins' actions actually jeopardized public safety. "The process one is due is not dependent on whether the government was right or wrong in the particular case but on whether, in general, constitutional norms require particular procedures to balance private and public interests." Camuglia, 448 F.3d at 1222. It only matters that due process does not require a pre-deprivation hearing when such issues are objectively at play. al-Kidd, 131 S. Ct. at 2083.

Mr. Collvins finally argues that "the mere possibility of danger is not enough to justify a removal without appropriate process." Gomes v. Wood, 451 F.3d 1122, 1128 (10th Cir. 2006) (quotations omitted). Contrary to Mr. Collvins'

argument, however, the decision in this case does not make all errors made by inspectors grounds for immediate suspension. The uncontroverted summary judgment evidence is that Mr. Collvins made multiple errors of one kind or another, he had received repeated opportunities for retraining, and the errors continued. The Defendants' course of action was objectively reasonable and justifies the pre-hearing suspension of the certificate based upon safety concerns.

B.      Delay of Post-deprivation Hearing

We next consider whether the 11-month delay between Mr. Collvins' appeal and hearing resulted in inadequate post-deprivation review. The district court held that because there is no clearly established law indicating that the delay in Mr. Collvins' hearing was unconstitutional, he was entitled to qualified immunity. Again, we agree.

"[E]ven when . . . a pre-hearing removal is justified, the state must act promptly to provide a post-removal hearing." Gomes, 451 F.3d at 1128. In making the determination whether the state action provided due process, it is appropriate to examine a number of factors. FDIC v. Mallen, 486 U.S. 230, 242 (1988). These include "[1] the importance of the private interest and the harm to this interest occasioned by delay; [2] the justification offered by the Government for delay and its relation to the underlying governmental interest; and [3] the likelihood that the interim decision may have been mistaken." Id.

The district court examined the delay in light of these factors. Regarding

the first factor, the court acknowledged that Mr. Collvins could not work as a boiler inspector without his certificate, but concluded that because he went on disability due to chemotherapy treatments just two weeks after the suspension, his interest in his certificate was diminished. Mr. Collvins argues that his disability status is irrelevant. Aplt. Br. 29–30. In particular, he claims that "he never would have needed disability benefits if Mr. Sturm and Mr. Hackford had not taken away his ability to earn a living." Aplt. Reply Br. 11. We disagree. The only legitimate reason Mr. Collvins could have gone on disability was if he was unable to work, independent of the revocation of his license. Morever, because neither he nor his employer reapplied for a 2008 certificate, the practical effect of the delay was minimal.

The second and third factors, however, seem to cut in favor of Mr. Collvins. As to the second factor—the Division's justification for the delay—Mr. Collvins argues that the Division was simply toying with him. Aplt. Br. 30. Although there is no evidence for such a strong inference, the testimony of the Defendants does not sufficiently explain the delay. For example, Mr. Hackford testified that the appeal took a long time because the Division "was just getting all of our stuff together," App. 194, and Mr. Sturm explained that the Division did not have a policy or procedure in place for appeals, App. 202. Regarding the third factor—the likelihood of mistake—Mr. Collvins argues that Mr. Sturm did not adequately investigate the allegations and accurately cites the fact that the

ALJ found as much.  Aplt. Br. 31.

Although the factors cut both ways, we need not decide whether a constitutional violation occurred because no clearly established law put the Defendants on notice that the delay may have been unconstitutional.  As an initial matter, case law from the Supreme Court and Tenth Circuit presents no bright-line rules as to when a delay becomes unconstitutional.  In fact in one case, the Supreme Court held that a 9-month delay in holding a hearing is not per se unconstitutional.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 (1985).  Rather, the precedent indicates that the determination of the constitutionality of a delay is a fact-intensive analysis based on the factors described above.  See, e.g., Mallen, 486 U.S. at 242.  There is no precedent sufficiently on point with this case that could have put Defendants on notice that the delay was unconstitutional.

The only authority to which Mr. Collvins cites to contradict this position is Gomes's holding that a post-deprivation hearing must be "prompt."  Aplt. Br. 31; Oral Arg. at 10:14–11:05.  This is insufficient.  For one, Gomes dealt with the removal of a child from a home based on allegations of abuse.  451 F.3d at 1128.  This presents very different considerations under the Mallen factors than the current case.  Although it does not have to be factually identical, Gomes sheds absolutely no light on the context of this case.

Qualified immunity is intended to give "government officials breathing

room to make reasonable but mistaken judgments about open legal questions [and] protect[] all but the plainly incompetent or those who knowingly violate the law." al-Kidd, 131 S. Ct. at 2085 (quotation omitted). Because neither the Supreme Court nor the Tenth Circuit has any precedent that would have put Defendants on notice that their actions may have been unconstitutional, they are entitled to qualified immunity.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge