FILED
United States Court of Appeals
Tenth Circuit

January 15, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

COMPREHENSIVE ADDICTION
TREATMENT CENTER, INC., a
Colorado corporation; PAMELA
MANUELE,

     Plaintiffs - Appellants,

v.

DARIA LESLEA, individually and in her
official capacity as Controlled Substance
Administrator, Division of Behavioral
Health, f/k/a Alcohol and Drug Abuse
Division, Colorado Department of Human
Services; JANET WOOD, individually
and in her official capacity as Director,
Division of Behavioral Health, f/k/a
Alcohol and Drug Abuse Division,
Colorado Department of Human Services;
MARY McCANN, individually and in her
official capacity as Clinical Director,
Division of Behavioral Health f/k/a
Alcohol and Drug Abuse Division,
Colorado Department of Human Services;
KAREN BEYE, individually and in her
official capacity as Executive Director,
Colorado Department of Human Services;
JOSCELYN GAY, individually and in her
official capacity as Deputy Executive
Director, Office of Behavioral Health,
Colorado Department of Human Services;
KAREN MOONEY, individually and in
her official capacity as Treatment Field
Manager, Division of Behavioral Health
f/k/a Alcohol and Drug Abuse Division,

No. 13-1094
(D.C. No. 1:11-CV-03417-CMA-MJW)
(D. Colo.)

Colorado Department of Human Services;
THE COLORADO DEPARTMENT OF
HUMAN SERVICES, DEPARTMENT
OF BEHAVIORAL HEALTH,

Defendants - Appellees.

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **MATHESON**, Circuit Judges.

Comprehensive Addiction Treatment Services, Inc. ("CATS") and its managing

director, Pamela Manuele (together, the "Plaintiffs"), appeal the district court's dismissal

of their complaint and its holding that the defendants sued in their individual capacities

were entitled to qualified immunity. Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

**I**

Because this appeal concerns the district court's disposition of a motion to

dismiss, we take the following facts from the complaint unless otherwise noted. See

Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013). Since Manuele founded it in

1988, CATS has operated privately funded outpatient opioid-treatment programs in

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

Denver, Colorado. Such programs are designed to help patients break their addiction to illegal opioids, particularly heroin.

Programs like CATS are regulated by an array of government entities. These include the U.S. Drug Enforcement Agency, the Substance Abuse and Mental Health Services Administration, and, in Colorado, the Colorado Department of Human Services' Division of Behavioral Health ("DBH").[1] DBH administers two relevant regulatory schemes, providing controlled substance licenses and treatment facility licenses.

In 2004, Daria Leslea was hired as the Controlled Substance Administrator at DBH. Leslea approved a renewal of CATS' treatment facility license in January 2005. On October 5, 2006, CATS reported to DBH that a patient had died of a suspected heroin overdose. On the same day, DBH ordered CATS to cease taking new patients or readmitting former patients. DBH began to investigate, and CATS and Manuele cooperated with the investigation by making patient files available. On January 8, 2007, CATS submitted an annual application to DBH for renewal of its controlled substance license. Although DBH often renews a controlled substance license within a few days, it took no action until April 2, 2007, when it denied the license. CATS appealed the denial to the Colorado Office of Administrative Courts, and the Administrative Law Judge ("ALJ") concluded that DBH could not deny CATS' controlled substance license renewal on the basis that CATS had allegedly violated the treatment facility license rules. The

---

[1] DBH was formerly known as the Alcohol and Drug Abuse Division. We follow the parties' lead in referring to DBH by its current title.

ALJ also terminated the order which prevented CATS from taking new patients and readmitting existing ones.

On January 22, 2008, one week before the issuance of the ALJ's order regarding the controlled substance license, CATS applied to renew its treatment facility license. DBH denied the application, alleging 1150 violations of the treatment facility rules. CATS informed DBH it would appeal, once again, to the Office of Administrative Courts. On March 4, 2008, defendant Karen Beye, the Executive Director of the Colorado Department of Human Services, issued an "Order of Summary Suspension" (the "Order"), which immediately closed CATS and resulted in the reassignment of CATS' patients to other methadone clinics. The Order stated that summary suspension was warranted and "emergency action" was necessary because six of CATS' patients had died due to negligence, but the six deaths had occurred over a period of three years and the most recent death predated the Order by two months.

CATS sought an expedited appeal, which began on March 11, 2008. On March 19, 2008, the ALJ issued an order from the bench, allowing CATS to reopen the clinic. The ALJ concluded, in a decision attached as an exhibit to CATS' complaint, that of the 1150 alleged violations, DBH had established only that CATS failed to conduct proper treatment planning with regard to two patients, and that CATS inappropriately allowed Manuele, instead of a physician, to conduct eight intake physicals. The ALJ determined that there was "insufficient evidence that" these ten violations were "deliberate and willful or that [the violations] created a substantial danger to public health and safety."

The ALJ also refused to impose a penalty on CATS because DBH had not provided CATS with an opportunity to cure the violations, but noted that, even if the right to cure "did not apply to this case, the sanction already experienced by CATS based on [DBH's] summary suspension [was] more than a sufficient penalty for these violations."

Even after the second decision by the Office of Administrative Courts, individuals at DBH allegedly continued their attempts to force CATS to close, filing complaints with the Nursing Board and contacting federal regulators to recite allegations against CATS. Although CATS continues operating, it currently serves only 200 patients despite serving as many as 370 before the actions at issue in this case began in October 2006. In the second Office of Administrative Courts decision, the ALJ found that there were no disciplinary or sanctioning actions against CATS in its history until its application for renewal of its controlled substance license was denied in January 2007. According to the ALJ, CATS' relationship with DBH became "adversarial" only when Leslea was hired.

On December 30, 2011, the Plaintiffs filed suit in the United States District Court for the District of Colorado, alleging violations of federal constitutional due process rights under 42 U.S.C. § 1983 and also asserting state tort law claims. Plaintiffs sued DBH and several individuals in their individual and official capacities: Leslea; Beye; Janet Wood, the Director of DBH; Mary McCann, the Clinical Director of DBH; Joscelyn Gay, the Deputy Executive Director of DBH; and Karen Mooney, the Treatment Field Manager of DBH. Plaintiffs contend that the defendants began an effort to "destroy CATS and ruin Ms. Manuele's livelihood" in October 2006. They allege that the

defendants conducted "woefully inadequate investigations of" the business, accused CATS of charges that the defendants knew were groundless, and maneuvered to avoid allowing CATS the opportunity to cure any deficiencies.

The district court dismissed the complaint, concluding that it lacked subject matter jurisdiction over the § 1983 claims against DBH and the individual defendants in their official capacities, a holding that Plaintiffs do not challenge on appeal. It also determined that the individual defendants sued in their individual capacities were entitled to qualified immunity because the complaint failed to make out a violation of a constitutional right. The district court declined to exercise supplemental jurisdiction over the state law claims after the federal claims were dismissed. This appeal timely followed.

**II**

We review de novo a district court's grant of a motion to dismiss based on qualified immunity. Weise v. Casper, 593 F.3d 1163, 1166 (10th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). We take as true well-pled factual allegations, but we are not required to accept as true any legal conclusions contained in the complaint. Id. at 678-79.

Plaintiffs must satisfy a two-prong test to avoid dismissal when a defense of qualified immunity is raised. "The plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time

-6-

of the defendant's conduct." McBeth v. Himes, 598 F.3d 708, 716 (10th Cir. 2010) (quotation omitted). "[W]e have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. (alteration and quotation omitted).

CATS and Manuele "simply have not identified any" case law that could support the second prong of the qualified immunity analysis. Weise, 593 F.3d at 1168. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc) (quotation omitted). "Ordinarily, in order for the law to be clearly established, there must be a relevant Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains," Medina v. City & Cnty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992), such that existing precedent has "placed the statutory or constitutional question beyond debate," Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior caselaw to clearly establish the violation." Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

Plaintiffs have failed to meet their burden to demonstrate that any relevant rights were "clearly established" for purposes of the qualified immunity analysis. The district court concluded that Plaintiffs failed to allege facts sufficient to show a violation of a

constitutional right and held, in the alternative, that even if Plaintiffs had made out a claim under procedural or substantive due process, the individual defendants would still be entitled to qualified immunity because the rights were not clearly established. The district court noted that "Plaintiffs have not cited any authority in which courts have found that a plaintiff's constitutional right to due process was 'clearly established' in analogous factual situations." We agree, noting that Plaintiffs' briefs on appeal neglect even to mention the phrase "clearly established." See Smith v. McCord, 707 F.3d 1161, 1162 (10th Cir. 2013). Because we hold that Plaintiffs have failed to carry their burden on the second prong of the qualified immunity analysis, we do not decide whether the defendants violated Plaintiffs' constitutional rights. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

## A

Plaintiffs maintain that they were erroneously deprived of a property interest in violation of their procedural due process rights guaranteed by the Constitution. The argument appears to be premised on the issuance of the Order of Summary Suspension, the defendants' conduct at the hearings at the Colorado Office of Administrative Courts, and the alleged failure to properly investigate.[2] Regardless of the property interest

---

[2] The district court interpreted the Plaintiffs' complaint to contain an additional procedural due process claim premised on the denial of Plaintiffs' applications to renew their licenses, but the court concluded that "Plaintiffs lacked a cognizable property interest in the renewal of their" licenses. Plaintiffs do not appear to challenge that conclusion on appeal.

-8-

involved, however, Plaintiffs have failed to demonstrate that the rights the defendants allegedly violated were clearly established, and thus have not met their burden. Plaintiffs' opening brief relies heavily on Mathews v. Eldridge, 424 U.S. 319 (1976), and Ward v. Anderson, 494 F.3d 929 (10th Cir. 2007). Neither case would have made it "clear to a reasonable officer that" the process given to the Plaintiffs "was unlawful in the situation." Cortez, 478 F.3d at 1114.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333 (quotation omitted). "Mathews held that in determining what process is due, courts must balance: (i) the private interests that will be affected by the official action, (ii) the risk of erroneous deprivation, and (iii) the government's interest including the fiscal and administrative costs of additional process." Rector v. City & Cnty. of Denver, 348 F.3d 935, 941 (10th Cir. 2003).

The Plaintiffs in the present matter, as discussed in Part I, supra, received substantial process at the Colorado Office of Administrative Courts. The question is whether the process was clearly insufficient. We have recognized that in certain matters of public health and safety, "a meaningful postdeprivation hearing is adequate." Camuglia v. City of Albuquerque, 448 F.3d 1214, 1220 (10th Cir. 2006) (quotation omitted); see also Collvins v. Hackford, 523 F. App'x 515, 518 (10th Cir. 2013) (unpublished) (listing relevant cases). Because the Plaintiffs' rights must be balanced against the state's interest in protecting a vulnerable population, the Mathews balancing

test renders it "difficult . . . for state officials to know that they have violated clearly established law." Garramone v. Romo, 94 F.3d 1446, 1451 (10th Cir. 1996) (discussing "health and welfare" of children). Given that the Court in Mathews upheld the termination of disability benefits, it is insufficient to demonstrate that the Plaintiffs' rights were clearly established at the time they were allegedly violated.

Although Ward is more factually similar to the present matter, it also does not demonstrate that the rights at issue were clearly established. Ward involved an allegedly improper investigation by a licensing agency, but we concluded in that case that no violations of procedural or substantive due process rights had been shown. 494 F.3d at 931, 939. We agree with the Plaintiffs that Ward is distinguishable in various ways from the matter at hand, but, even so, Ward does not offer a source of clearly established law sufficient for the second prong of the qualified immunity analysis. Thus, Plaintiffs have failed to carry their burden on their procedural due process claims, and the defendants are entitled to qualified immunity.

**B**

Similarly, even if we assume that the Plaintiffs' substantive due process rights have been violated, the defendants are entitled to qualified immunity because the Plaintiffs have failed to demonstrate that the relevant rights were clearly established. Although Plaintiffs' reply brief cites to a number of cases for different propositions, again, none even purport to demonstrate that the rights were clearly established. An examination of the cited cases makes clear that they do not support Plaintiffs' claims in

this case.  The cases reflect challenges to government action in very different factual

scenarios.  See Cnty. of Sacramento v. Lewis, 523 U.S. 833 (1998) (high speed chase);

Washington v. Glucksberg, 521 U.S. 702 (1997) (prohibition on causing or aiding a

suicide); Green v. Post, 574 F.3d 1294 (10th Cir. 2009) (automobile collision with

sheriff's deputy); Dias v. City & Cnty. of Denver, 567 F.3d 1169 (10th Cir. 2009) (ban of

pit bulls); Seegmiller v. LaVerkin City, 528 F.3d 762 (10th Cir. 2008) (reprimand of

police officer for off-duty sexual conduct); Graves v. Thomas, 450 F.3d 1215 (10th Cir.

2006) (another high speed chase); Moore v. Guthrie, 438 F.3d 1036 (10th Cir. 2006)

(police officer injury during training exercise); Tonkovich v. Kan. Bd. of Regents, 159

F.3d 504 (10th Cir. 1998) (dismissal of law professor).  The cases cited in support of the

substantive due process claim in Plaintiffs' opening brief are similarly inapposite.[3]

    "[G]iven the sparsity of Plaintiff[s'] argument and [the] failure to point to any

authority to support [their] claims," let alone their complete failure to address the "clearly

---

[3] We also agree with the district court that Plaintiffs' arguments in the "Response
to Defendants' Motion to Dismiss" were insufficient to overcome the qualified immunity
hurdle.  Much of that document was dedicated to the proposition that the defendants
violated clearly established state law by failing to provide Plaintiffs the right to cure the
alleged violations, failing to undertake an appropriate investigation, and making improper
allegations.  "A state's violation of its own law, however, is not sufficient, in and of
itself, to create a federal constitutional violation."  Becker v. Kroll, 494 F.3d 904, 917
(10th Cir. 2007).  Plaintiffs' assertions that defendants failed to comply with state law do
not support their argument under the second prong of the qualified immunity analysis,
which requires clearly established federal law.  Although one paragraph of the Plaintiffs'
substantive briefing to the district court in response to the defendants' motion to dismiss
includes citations apparently intended to demonstrate the existence of clearly established
federal law, our examination of those cases reveals that they do not offer a source of
"clearly established" law relevant to the case before us.

established" standard on appeal, Plaintiffs have "simply failed to carry the burden assigned to" them. Rojas v. Anderson, 727 F.3d 1000, 1005-06 (10th Cir.), cert. denied, 13-528, 2013 WL 5775225 (U.S. Dec. 9, 2013) (alteration and quotation omitted). Therefore, "we have no choice but to affirm the grant of qualified immunity." Id. at 1006. We do not address or express any opinion on the merits of the Plaintiffs' claims that their constitutional rights were violated.

## III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge