FILED
United States Court of Appeals
Tenth Circuit

January 26, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

COLUMBIAN FINANCIAL
CORPORATION; THE
COLUMBIAN BANK & TRUST
COMPANY,

      Plaintiffs - Appellants,

v.

JUDI M. STORK; DERYL K.
SCHUSTER; OFFICE OF THE
STATE BANK COMMISSIONER
OF KANSAS; EDWIN G.
SPLICHAL; J. THOMAS THULL,

      Defendants - Appellees.

No. 14-3274

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:14-CV-02168-SAC-KGS)**
_____

Matthew J. Limoli, (John M. Edgar and Michael D. Pospisil with him on
the briefs), Edgar Law Firm, LLC, Kansas City, Missouri, for Plaintiffs-
Appellants.

Jay D. Befort, General Counsel, Special Assistant Attorney General
(Dustin L. Kirk, Staff Attorney, Special Assistant Attorney General, with
him on the brief), Office of the State Bank Commissioner, Topeka, Kansas,
for Defendants-Appellees.

_____

Before **GORSUCH**, **EBEL**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.

_____

Amidst the 2007–2008 financial crisis, the Office of the State Bank Commissioner of Kansas declared The Columbian Bank and Trust Company insolvent, seized the bank's assets, and appointed the Federal Deposit Insurance Corporation as receiver. The FDIC then sold many of the bank's assets. Columbian Financial Corporation, the bank's sole shareholder, sued the state bank commission and four commission officials (Ms. Judi Stork, Mr. Deryl Schuster, Mr. Edwin Splichal, and Mr. J. Thomas Thull) under 42 U.S.C. § 1983.[1] In the complaint, Columbian Financial alleges denial of due process from the seizure of bank assets, seeking equitable remedies and damages.[2]

The district court dismissed the complaint. On the equitable claims, the district court ordered dismissal without prejudice under *Younger v. Harris*, 401 U.S. 37 (1971). On the claims for damages, the court ordered dismissal, concluding that (1) Eleventh Amendment immunity applied to all of the claims against the state bank commission and the official-capacity claims against Ms. Stork and Mr. Schuster and (2) Ms. Stork and

_____

[1]    In district court, the bank was included as a plaintiff. The district court dismissed the claims brought by the bank, concluding that it could not sue under § 1983. This ruling has not been appealed.

[2]    Ms. Stork is named in her individual and official capacities, Mr. Schuster is named in his official capacity, and Mr. Splichal and Mr. Thull are named in their individual capacities.

2

Mr. Schuster, in their official capacities, were not considered "persons" for purposes of § 1983. The district court ruled that Mr. Splichal had absolute immunity and that all of the commission officials enjoyed qualified immunity in their individual capacities. This appeal followed, with the parties raising two issues.

The first issue is whether the district court properly abstained under *Younger*. *Younger* requires federal courts to refrain from ruling when it could interfere with ongoing state proceedings. *Sprint Commc'ns, Inc. v. Jacobs*, __ U.S. __, 134 S. Ct. 584, 591 (2013). Though a state court proceeding was ongoing when the federal complaint was filed, the state proceeding terminated while this appeal was pending. In light of this change of circumstances, we vacate the dismissal without prejudice on the equitable claims and remand for further proceedings.

The second issue is whether Ms. Stork and Mr. Thull are entitled to qualified immunity on the claims for damages. Columbian Financial alleged violation of a clearly established right to procedural due process when commission officials seized the bank's assets and placed them under FDIC receivership without a predeprivation hearing or a prompt postdeprivation hearing. In our view, Ms. Stork and Mr. Thull enjoy qualified immunity on this claim because the alleged conduct would not have violated a clearly established constitutional right. Thus, we agree

3

with the district court's decision to dismiss the claims for damages against Ms. Stork and Mr. Thull.

## I.    The bank was declared insolvent, its assets were seized, and the FDIC was appointed as receiver.

Because this appeal involves a ruling on a motion to dismiss, we take the following facts from the complaint unless otherwise noted. *See Brown v. Montoya*, 662 F.3d 1152, 1162-63 (10th Cir. 2011).

Like many financial institutions, The Columbian Bank and Trust Company experienced financial difficulties during the 2007–2008 financial crisis. These difficulties led the FDIC to conduct an onsite examination of the bank and downgrade its supervisory rating; months later, the bank entered into a consent agreement with the FDIC and the state bank commission.

The consent agreement stated that the FDIC and the state bank commission "had reason to believe that the [b]ank had engaged in unsafe and unsound banking practices," and the FDIC and the state bank commission ordered the bank to "cease and desist" from those practices. Appellant's App'x at 72. The order stiffened regulatory oversight of the bank, requiring written liquidity analyses, projections on sources of liquidity and uses of funds, and review and amendment of the bank's management policies. The bank's analyses, projections, and policy amendments were to be submitted to the state bank commission and the

4

FDIC for review and comment. The bank complied with these requirements.

Notwithstanding the bank's compliance, the state bank commission declared the bank insolvent, seized the bank's assets, and appointed the FDIC as receiver. The same day, the FDIC sold many of the bank's assets to a third party in a prearranged sale.

Columbian Financial and the bank did not obtain a hearing until after the state commission seized the bank's assets and appointed the FDIC as the receiver. But Columbian Financial and the bank petitioned a Kansas trial court for review of the commission's actions.

About eighteen months later, the Kansas trial court remanded the petition to the bank commission for a postseizure hearing. Roughly two more years elapsed before the bank commission issued a decision, granting summary judgment against Columbian Financial and the bank. They then filed a new petition for judicial review in the Kansas courts. The trial court dismissed the action as moot, and Columbian Financial and the bank appealed. *Columbian Bank & Trust Co. v. Splichal*, No. 110,256-57, 329 P.3d 557 (Kan. Ct. App. July 25, 2014) (unpublished). Before the Kansas Court of Appeals issued a decision, Columbian Financial filed this suit in federal court for deprivation of due process. The federal district court ordered dismissal, relying in part on *Younger* abstention and qualified immunity.

5

This appeal followed. While our appeal was pending, the state-court appeal terminated in favor of the state bank commission. *Columbian Bank & Trust Co. v. Spichal*, No. 110,256-57, 329 P.3d 557 (Kan. Ct. App. July 25, 2014) (unpublished), *rev. denied* (Kan. June 29, 2015).

## II. In light of a change in circumstances, we vacate the district court's dismissal of the equitable claims.

We engage in de novo review of the district court's decision to abstain under *Younger v. Harris*, 401 U.S. 37 (1971). *Brown ex rel. Brown v. Day*, 555 F.3d 882, 887 (10th Cir. 2009). Under *Younger*, federal courts must abstain from exercising jurisdiction when three conditions are satisfied:

1. There is an ongoing state proceeding.

2. The state court provides an adequate forum for the claims raised in the federal complaint.

3. The state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

*Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)). If these three conditions are met, abstention under *Younger* is mandatory. *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997).

The parties disagree only on the first *Younger* prong: whether there is an ongoing state proceeding. Under our precedent, we ask both whether there is an ongoing state proceeding and whether this proceeding is the

6

type afforded *Younger* deference. *Brown*, 555 F.3d at 888. The parties

agree that

- the state proceeding was ongoing when Columbian Financial filed its federal complaint and

- the state proceeding has terminated.

Thus, if Columbian Financial were to refile its federal complaint, *Younger*

would no longer present a jurisdictional hurdle.

The termination of the state proceeding might render the *Younger*

issue moot. But we need not decide this issue.[3] Regardless of whether the

*Younger* issue is moot, Columbian Financial could now prosecute the

equitable claims in federal court in light of the termination of the state

administrative proceedings. For example, if we were to affirm the

dismissal, Columbian Financial could refile because the dismissal was

---

[3] Some courts have held that under *Younger*, a state proceeding is considered ongoing if it was pending when the federal suit was filed. *See Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1250 (8th Cir. 2012) ("[T]he relevant time for determining if there are ongoing state proceedings is when the federal complaint is filed."); *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 777 (1st Cir. 1990) (same); *Beltran v. California*, 871 F.2d 777, 782 (9th Cir. 1988) (holding that *Younger* abstention was required even where "the state court proceedings were completed by the time the district court granted summary judgment"). But *Younger* may also require abstention when the state proceeding is begun during the pendency of the federal proceeding. *See Hicks v. Miranda*, 422 U.S. 332, 349 (1975) ("[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force."). In this case, the opposite situation exists: the state case preceded initiation of the federal case, but ended while our appeal was pending.

7

without prejudice. And if we were to reverse the dismissal, Columbian Financial could renew the equitable claims already filed.

In these circumstances, we vacate dismissal of the equitable claims and remand these claims to the district court so that it can reconsider them without the need to abstain now that the state proceedings have ended. *See Citizens Potawatomi Nation v. Freeman*, 113 F.3d 1245, 1297 WL 235624, at *1-2 (10th Cir. 1997) (unpublished table decision). Thus, we vacate the district court's order dismissing Columbian Financial's equitable claims on *Younger* grounds and remand these claims for further consideration.[4]

## III. Ms. Stork and Mr. Thull are entitled to qualified immunity on the claims for damages.

Columbian Financial also seeks damages, claiming violation of its clearly established right to procedural due process when

- the bank's assets were seized and placed under FDIC receivership without a predeprivation hearing and

- the conclusion of the postdeprivation hearing was delayed by roughly three years and eight months.[5]

---

[4] In similar circumstances, two federal circuits (the Third and D.C. Circuits) have treated the *Younger* issue as moot. *Bass v. Butler*, 258 F.3d 176, 179 (3d Cir. 2001); *Davis v. Rendell*, 659 F.2d 374, 376 (3d Cir. 1981); *Woods v. Several Unknown Metro. Police Officers*, 835 F.2d 340, 341-42 (D.C. Cir. 1987). But in these circuits, the disposition was the same as ours. *Bass*, 258 F.3d at 179; *Woods*, 235 F.3d at 342.

[5] The state bank commission issued the Declaration of Insolvency on August 22, 2008, and the decision on April 18, 2012.

8

On these claims, the federal district court held that Ms. Stork and Mr. Thull were entitled to qualified immunity. We agree.

### A. We engage in de novo review of the district court's dismissal based on qualified immunity.

We engage in de novo review when the district court orders dismissal based on qualified immunity. *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). To overcome a motion to dismiss based on qualified immunity, Columbian Financial had to allege facts plausibly showing violation of a clearly established constitutional right. For a constitutional right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as [Columbian Financial] maintains." *Price–Cornelison v. Brooks*, 524 F.3d 1103, 1108 (10th Cir. 2008).

The parties agree that the Fourteenth Amendment's Due Process Clause applies, entitling Columbian Financial to due process; the disputed question is what process was due. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))).

The Supreme Court has explained that while "the right to due process of law is quite clearly established by the Due Process Clause," not every due process violation involves a clearly established right. *Anderson v.*

9

*Creighton*, 483 U.S. 635, 639-40 (1987). Rather, Columbian Financial must show that the desired process was clearly established given the particular facts. *See id.*[6]

## B. The seizure of the bank's assets and the appointment of the FDIC as receiver without a prior hearing did not violate a clearly established constitutional right.

Columbian Financial claims a denial of procedural due process based on the lack of a hearing prior to seizure of the bank assets and appointment of a receiver. On this claim, the two sides point to dueling lines of authorities.

Ms. Stork and Mr. Thull point to precedent stating that a predeprivation hearing is unnecessary when state officials seize bank assets and appoint a conservator. In response, Columbian Financial argues that conservators can control bank assets only temporarily while receivers can permanently dispose of the bank's assets. Our precedents have not squarely addressed the need for a predeprivation hearing when a bank's assets are placed in the control of a receiver (rather than a conservator).

Columbian Financial points to our precedent requiring a predeprivation hearing for a pawnshop when a state official returns an item

---

[6] Ms. Stork and Mr. Thull argue that the postdeprivation hearing was timely because it complied with Kansas law. Appellees' Resp. Br. at 23-27. This argument is invalid, for Kansas law does not bear on what process is due under the Fourteenth Amendment. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (explaining that state law may bear on whether due process is required, but not on what process is due).

10

to its owner after it had been stolen and pawned. But as Ms. Stork and Mr. Thull point out, this precedent does not involve the need for quick intervention when a bank faces imminent collapse.

The result is a gray area where state officials appoint a receiver over bank assets and allow those assets to be sold without a predeprivation hearing. In this gray area, the constitutional right to a predeprivation hearing is not clearly established.

1.     **Ms. Stork and Mr. Thull rely on precedent allowing appointment of conservators without a predeprivation hearing.**

Ms. Stork and Mr. Thull rely in part on *Fahey v. Mallonee*, where the Supreme Court upheld the constitutionality of a statute permitting ex parte appointment of a conservator. 332 U.S. 245, 249, 253-54 (1947). In that case, a federal agency appointed a conservator for a savings and loan association, which complained about the unavailability of a predeprivation hearing. *Id.* at 247. The Supreme Court held that a postdeprivation hearing satisfied due process and that a predeprivation hearing was not constitutionally required. *Id.* at 253-54.

Guided by *Fahey*, we held in *Franklin Sav. Ass'n v. Director, Office of Thrift Supervision* that the opportunity for a postdeprivation hearing "precludes any due process violations" when a conservator is appointed for a bank that had been seized. 934 F.2d 1127, 1140 (10th Cir. 1991). There a federal agency appointed a conservator for a savings and loan association

11

without a prior hearing. *Id.* at 1135, 1140. The federal statute permitted the ex parte appointment of a conservator without any notice, but allowed post-seizure judicial review. *Id.* at 1136. We held that the availability of a postdeprivation hearing satisfied due process. *Id.* at 1140.

**2.** **Columbian Financial relies on a precedent involving loss of ownership of a single item (a ring) without a predeprivation hearing.**

Columbian Financial relies on *Winters v. Bd. of Cnty. Comm'rs*, which involved the lost ownership of a ring. 4 F.3d 848, 850 (10th Cir. 1993). In *Winters*, the police retrieved a stolen ring from a pawnshop and returned the ring to its rightful owner, all without affording the pawnshop a hearing. *Id.* at 850-51. We held that this action had deprived the pawnshop of procedural due process. *Id.* at 858.

**3.** **Columbian Financial did not plead facts showing the violation of a clearly established constitutional right.**

For the sake of argument, we can assume that Columbian Financial's reading of *Winters* is correct and that the U.S. Constitution required a hearing before state officials could appoint a receiver or allow transfer of the bank's assets. For qualified immunity, however, the question is whether that constitutional requirement was clearly established. It was not: *Winters* is at least arguably distinguishable, and *Franklin* and *Fahey* are at least arguably applicable even when the governmental action results in the permanent loss of bank assets.

12

The facts in *Winters* differ from ours and would have provided little guidance to commission officials, for they could reasonably regard the possibility of a bank failure as a far greater public danger than the inability to return a pawned item to a pawnshop. The danger of a bank failure could require commission officials to react quickly; in contrast, the need for quick governmental action would not have been readily apparent in *Winters*.

But Columbian Financial views *Franklin* and *Fahey* as distinguishable, arguing that the appointment here involved a receivership (rather than a conservatorship) and would have resulted in permanent loss of Columbian Financial's ownership interests.

Our court has acknowledged that the consequences of a receivership and conservatorship are different. *See Franklin Sav. Ass'n v. Dir., Office of Thrift Supervision*, 934 F.2d 1127, 1141 (10th Cir. 1991); *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 35 F.3d 1466, 1471 (10th Cir. 1994). Based on this difference, Columbian Financial argues that appointment of a receiver would trigger a right to a predeprivation hearing even if no such right exists when a conservator is appointed.

For the sake of argument, we can assume that Columbian Financial is correct. The issue, however, is whether this distinction would have been clear to state officials like Ms. Stork and Mr. Thull. In our view, that distinction would have been hazy, to say the least, in light of Supreme

13

Court precedent, treatment of the issue in other circuits, state law, and our own precedent.

The Supreme Court has held that government officials can seize property without a prior hearing when three circumstances exist:

1.  The seizure "is directly necessary to secure an important governmental or general public interest."

2.  There is a "special need for very prompt action."

3.  The government "kept strict control over its monopoly on legitimate force; the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance."

*Fuentes v. Shevin*, 407 U.S. 67, 91-92 (1972).

Ms. Stork and Mr. Thull could reasonably conclude that these factors would allow the seizure of bank assets without a prior hearing. For example, Ms. Stork and Mr. Thull could reasonably consider the first and second factors as supportive, viewing the safety of the banking system as an important governmental interest requiring immediate action. *See id.* ("[T]he Court has allowed summary seizure of property . . . to protect against the economic disaster of a bank failure."); *see also James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099-1100 (D.C. Cir. 1996) (concluding that the first factor supported seizure and disposal of bank assets prior to a hearing because the government "has a substantial interest in moving quickly to seize insolvent institutions" and a preseizure hearing could

14

increase losses to depositors and the FDIC insurance fund). In addition, Ms. Stork and Mr. Thull could reasonably regard the third factor as supportive, for Kansas has strictly controlled the power to seize bank assets. *See* Kan. Stat. Ann. § 9-1903 (2015) (establishing the state bank commission's power to seize "critically undercapitalized" or "insolvent" banks).

This application of the three factors is subject to reasonable debate. But Ms. Stork and Mr. Thull had to decide whether to allow a predeprivation hearing, without any dispositive precedent, by applying the three factors to the appointment of a receiver for a bank facing possible collapse.

In making this decision, Ms. Stork and Mr. Thull could reasonably consider what other circuits had done in similar circumstances. Three other circuits had held that a predeprivation hearing was unnecessary even when the bank is placed in the hands of a receiver rather than a conservator. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1101 (D.C. Cir. 1996) (holding that the right to due process did not require a hearing before the government seized banks and allowed the FDIC to liquidate the banks); *First Fed. Sav. Bank & Trust v. Ryan*, 927 F.2d 1345, 1358 (6th Cir. 1991) (holding that a postdeprivation hearing satisfies due process because "[i]n the event of wrongful appointment of a receiver, [the plaintiff] could sue for all damages arising out of the wrongful appointment"); *FDIC v. Am.*

15

*Bank Trust Shares, Inc.*, 629 F.2d 951, 953-54 (4th Cir. 1980) (rejecting a bank's due process claim when the bank was not provided notice prior to appointment of the FDIC as a receiver and sale of the bank's assets); *see also Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1410 (5th Cir. 1987) ("The Supreme Court has held that there is no constitutional requirement that an association be given an adjudicatory hearing prior to the [Federal Home Loan Bank Board's] appointment of a receiver.").

Columbian Financial counters that two of the cited opinions are distinguishable and that state law provided a mechanism for a predeprivation hearing while state officials protected the public. We reject both arguments.

According to Columbian Financial, *Woods* and *American Bank Trust Shares* are distinguishable because they involved greater evidence justifying the immediate appointment of receivers. But Ms. Stork and Mr. Thull could reasonably regard the present circumstances as similar, for the complaint reflects close scrutiny by regulators prior to the appointment of a receiver. With this scrutiny already underway, state officials could reasonably debate the necessity of a predeprivation hearing. As a result, we reject Columbian Financial's reliance on factual distinctions between their circumstances and the circumstances in *Woods* and *American Bank Trust Shares*. Even if we were to fully credit these purported distinctions, we

16

could not regard the right to a predeprivation hearing as clearly established.

In addition, Columbian Financial contends that state law provided a mechanism to protect the public by allowing a hearing to take place before the seizure of any bank assets. This argument is based on a misinterpretation of Kansas law.

Columbian Financial relies on § 9-1903 of the Kansas Statutes, which allows state officials to appoint a special deputy commissioner to take control of a bank if it is insolvent or critically undercapitalized. Kan. Stat. Ann. § 9-1903 (2015). But the special deputy commissioner is to take control only until a receiver is appointed. *Id.* That appointment is to take place "forthwith" if the commissioner determines that the bank cannot sufficiently recapitalize, resume business, or liquidate its indebtedness to the satisfaction of depositors and creditors. Kan. Stat. Ann. § 9-1905 (2015).

Columbian Financial pleaded in the complaint that the commissioner had declared the bank insolvent. Thus, under state law, the commissioner was required to appoint a receiver "forthwith." In these circumstances, the appointment of a special deputy commissioner would not have provided a mechanism to allow a hearing prior to the appointment of a receiver. To the contrary, state law required the state bank commissioner to appoint the receiver "forthwith." He did that by appointing the FDIC as the receiver.

17

Ms. Stork and Mr. Thull could reasonably rely not only on Supreme Court precedent and case law in other circuits, but also on our own precedent in *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 35 F.3d 1466 (10th Cir. 1994). There the government appointed a conservator over a savings and loan association, provided a hearing, and appointed a receiver. *See Franklin Sav. Ass'n*, 35 F.3d at 1468, 1472. Complaining about the receivership, the savings and loan association claimed that it was entitled to additional process before the government replaced the conservator with a receiver. *See id.* at 1471. For this claim, the savings and loan association made an argument similar to Columbian Financial's: that "the decision to replace the conservator with a receiver entails a permanent, rather than temporary, deprivation of property." *Id.* We rejected this argument. *Id.* at 1472.

As Columbian Financial points out, the savings and loan association had already had a hearing by the time a receiver was appointed. *Id.* But we relied not only on the availability of a hearing, but also on our conclusion that replacement of a conservator with a receiver did not result in any further property loss:

> Once a conservator is appointed, the conservator gains "all the powers of the members, the stockholders, the directors, and the officers of the [savings and loan] association and shall be authorized to operate the association in its own name or to conserve its assets." 12 U.S.C.A. § 1464(d)(2)(E)(i) (Supp. 1994). Because the [a]ssociation and its stockholders do not retain authority to control specific assets after the conservator

18

> takes control of the savings and loan, a later decision to employ a receiver does not deprive the owners or operators of more property.

*Id.* at 1471-72.

Columbian Financial argues that its situation is different because it did not obtain any hearing before the appointment of a receiver. That is true and perhaps this difference is enough to distinguish *Franklin*. But even if we credit this distinction, Ms. Stork and Mr. Thull could reasonably rely on *Franklin*'s explanation that replacement of a conservator with a receiver did not result in any further loss of property for the savings and loan association. And as discussed above, our precedents had already held that there was no constitutional right to a predeprivation hearing prior to the appointment of a conservator. In these circumstances, we cannot regard the necessity of a predeprivation hearing as "clearly established."

Even Columbian Financial acknowledges that no predeprivation hearing is necessary when the State faces a "need for 'swift or expedited action.'" Appellant's Opening Br. at 32-33 (quoting *Winters v. Bd. of Cnty. Comm'rs*, 4 F.3d 848, 857 (10th Cir. 1993)). Ms. Stork and Mr. Thull could reasonably conclude that they needed to move quickly once the bank was declared insolvent.

At a minimum, the constitutional necessity of a predeprivation hearing would have been unclear to state officials pondering whether to

19

immediately appoint a receiver or wait until Columbian Financial could obtain a hearing. In these circumstances, the denial of a predeprivation hearing did not violate a clearly established constitutional right. Thus, we affirm the district court's ruling that Ms. Stork and Mr. Thull are entitled to qualified immunity on the claim involving denial of a predeprivation hearing.

**C.    The delay in the postdeprivation hearing did not violate a clearly established constitutional right.**

Columbian Financial also contends that the delay between the bank's seizure and the conclusion of the postdeprivation hearing violated a clearly established right to procedural due process. We disagree.

"The Due Process Clause requires provision of a hearing 'at a meaningful time.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 534 (1985) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And prompt postdeprivation proceedings are particularly important when a predeprivation hearing is unavailable. *FDIC v. Mallen*, 486 U.S. 230, 241-42 (1988). Thus, at some point, an unjustifiable delay in postdeprivation proceedings may become a constitutional violation. But locating that line is sometimes difficult.

To decide whether the delay is excessive, we balance three factors:

1.    "the importance of the private interest and the harm to this interest occasioned by delay,"

20

2. "the justification offered by the government for delay and its relation to the underlying governmental interest," and

3. "the likelihood that the interim decision may have been mistaken."

*Id.* Based on these factors, "the determination of the constitutionality of a delay is a fact-intensive analysis." *Collvins v. Hackford*, 523 F. App'x 515, 520 (10th Cir. 2013) (unpublished).[7]

The first factor (the importance of the private interest and harm from the delay) could cut either way. Columbian Financial enjoys an important private interest in being free from the unlawful deprivation of its property by the government.[8] *See Mallen*, 486 U.S. at 240. But Ms. Stork and Mr. Thull could reasonably conclude that the delay did not substantially harm

---

[7]    Columbian Financial relies in part on *Barry v. Barchi*, 443 U.S. 55 (1979), and *Lawrence v. Reed*, 406 F.3d 1224 (10th Cir. 2005). This reliance is misguided. The Supreme Court in *Barchi* held only that the plaintiff was entitled to a "prompt postsuspension hearing," and the Court did not address what would constitute a prompt hearing. 443 U.S. at 66. And *Lawrence* involved the right to a predeprivation hearing, not delay in a postdeprivation hearing. 406 F.3d at 1239.

[8]    The district court found Columbian Financial's interest diminished due to the "constant and intensive government regulation" of banks. Appellant's App'x at 204. Some other courts have engaged in similar reasoning. *See First Nat'l Bank & Trust v. Dept. of the Treasury*, 63 F.3d 894, 896 (9th Cir. 1995) (concluding that the private interest was diminished because the bank's shareholders "had full knowledge" of extensive bank regulations); *Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1411 (5th Cir. 1987) (concluding that the private interest was diminished because the shareholder "was aware of the extensive regulatory system" for banks). We need not decide whether to adopt this approach. In our view, Ms. Stork and Mr. Thull would enjoy qualified immunity even if we disregard the existence of bank regulations in connection with the first factor.

21

Columbian Financial because its property interest in the bank's assets had already been "destroyed" when the bank was declared insolvent. Appellant's Opening Br. at 35; Oral Arg. at 14:06-14:18. Thus, this factor does not clearly favor Columbian Financial.

The second factor (whether a governmental interest can justify the delay) could also point either way. Part of Columbian Financial's wait could be attributed to normal court processes, but the state bank commission likely prolonged the state court proceedings by opposing a postdeprivation hearing. In these circumstances, much of the delay can be justified. But the state bank commission likely extended the delay by challenging Columbian Financial's right to a postdeprivation hearing. Thus, this factor does not clearly cut either way.

The third factor (the likelihood that the interim decision could be mistaken) could also cut either way. Columbian Financial argues that the Declaration of Insolvency was "conclusory" and "devoid of factual findings." Appellant's Opening Br. at 41. But Columbian Financial alleged in the complaint that prior to the Declaration of Insolvency

- the FDIC had conducted an onsite investigation,

- the FDIC had downgraded the bank's ratings, and

- the bank had entered into a consent decree with the FDIC and the state bank commission.

22

Based on these factual allegations, Ms. Stork and Mr. Thull could reasonably minimize the possibility of a mistake. *See Spiegel v. Ryan*, 946 F.2d 1435, 1440 (9th Cir. 1991) (finding "substantial assurance" that a temporary cease and desist order was not "baseless or unwarranted" due to a "long investigation" by the agency); *Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1412-13 (5th Cir. 1987) (engaging in similar reasoning).

The three factors do not clearly cut in favor of Columbian Financial.

\* \* \*

The balancing of these factors is fact intensive, and "a rule of law determined by a balancing of interests is inevitably difficult to clearly anticipate." *Melton v. City of Oklahoma City*, 879 F.2d 706, 729 (10th Cir. 1989). That difficulty was present here, for Ms. Stork and Mr. Thull faced two obstacles in determining the constitutionality of the delay.

The first was the absence of any "precedent sufficiently on point with this case that could have put [defendants] on notice that the delay was unconstitutional." *Collvins v. Hackford*, 523 F. App'x 515, 520 (10th Cir. 2013) (unpublished).

The second was the inherent uncertainty in how our court or the Supreme Court would apply the fact-intensive balancing test governing the constitutionality of delay in postdeprivation hearings. *See Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1202 (9th Cir. 2008) (holding that the defendant was entitled to qualified immunity because the issue involving

23

procedural due process turned on an unpredictable application of a complicated balancing test), *rev'd on other grounds*, *Los Angeles Cnty. v. Humphries*, 562 U.S. 29 (2010); *see also Benson v. Allphin*, 786 F.2d 268, 276 (7th Cir. 1986) ("It would appear that, whenever a balancing of interests is required, the facts of the existing caselaw must closely correspond to the contested action" to defeat qualified immunity.).

For both reasons, the delay in a postdeprivation hearing did not violate a clearly established constitutional right.

## IV.   Disposition

We vacate the dismissal without prejudice on the equitable claims, remanding them for further consideration without the need to abstain now that the state proceedings have terminated. We affirm the dismissal of the damage claims against Ms. Stork and Mr. Thull based on qualified immunity.