# In the
# United States Court of Appeals
# for the Second Circuit

August Term 2022

(Argued: January 3, 2023; Decided: March 12, 2025)

No. 22-1114-cv

ANNA GRISTINA,

*Plaintiff-Appellant*,

*v.*

JUAN MERCHAN, New York State Judge, in an official capacity, ALVIN BRAGG,
New York County District Attorney, in an official capacity,

*Defendants-Appellees*.

Before: MENASHI, LEE, AND MERRIAM, *Circuit Judges*.

Appeal from an order and judgment of the United States District Court for

the Southern District of New York (Crotty, *J*.) dismissing the Plaintiff-Appellant's

complaint for lack of subject-matter jurisdiction. Plaintiff-Appellant, Anna

Gristina, sued the Defendants-Appellees pursuant to 42 U.S.C. § 1983, seeking

injunctive and declaratory relief ordering the unsealing of certain state court transcripts. The district court dismissed the complaint for lack of subject-matter jurisdiction pursuant to the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). We hold that the district court properly abstained from exercising jurisdiction. Therefore, we AFFIRM.

Judge Menashi dissents in a separate opinion.

---

LAWRENCE P. LABREW, Law Office of Lawrence LaBrew, New York, NY, *for Plaintiff-Appellant*.

DAVID LAWRENCE III, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, *and* Ester Murdukhayeva, Deputy Solicitor General, *on the brief*), for Letitia James, Attorney General for the State of New York, New York, NY, *for Defendant-Appellee* Justice Juan Merchan.

ROBIN MCCABE, Assistant District Attorney (Alvin L. Bragg, Jr., District Attorney for New York County as Special Assistant Corporation Counsel, Steven C. Wu, Assistant District Attorney, *on the brief*), for Alvin L. Bragg, Jr., District Attorney for New York County, New York, NY, *for Defendant-Appellee* Alvin Bragg.

---

EUNICE C. LEE, *Circuit Judge*:

This appeal stems from Plaintiff-Appellant Anna Gristina's efforts to unseal several transcripts related to her 2012 New York State criminal prosecution and conviction for promoting prostitution. Nearly ten years after Gristina pleaded guilty to this state offense, Gristina filed a series of motions before Defendant-Appellee Justice Juan Merchan, who presided over her criminal case, requesting that the state court unseal several transcripts and other materials. After Justice Merchan denied Gristina's motion in part—but while that decision was still under review by higher state courts—Gristina filed suit in federal court under 42 U.S.C. § 1983 against Justice Merchan and New York District Attorney Alvin Bragg seeking declaratory and injunctive relief ordering the state court to unseal three specific transcripts.

The federal district court dismissed the suit, concluding that it was required to abstain from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971), because at the time Gristina brought her federal suit, the state court order denying unsealing of the transcripts was a pending matter in New York State court that involved a quintessentially judicial function. Alternatively, the district court concluded that the rule derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923),

3

and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ("*Rooker-Feldman*"), prohibited it from reviewing the state court order denying unsealing because that order was a final state court judgment of which Gristina's suit invited review and rejection. Gristina appealed.

We hold that the district court properly abstained from exercising jurisdiction pursuant to the *Younger* abstention doctrine. The state court's order denying unsealing, which was still under review by higher state courts at the time Gristina filed her federal suit, was a pending civil proceeding "uniquely in furtherance" of a state court's ability "to perform [its] judicial functions." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*"). Thus, *Younger* abstention was required. Accordingly, we AFFIRM.

## BACKGROUND

In connection with her position running a high-end prostitution ring, Anna Gristina pleaded guilty to one count of promoting prostitution in the third degree in violation of New York Penal Law section 230.25(1) on September 25, 2012. Justice Juan Merchan (a Defendant-Appellee in this case) sentenced Gristina to six months' imprisonment and five years' probation. Gristina did not appeal her state conviction.

On January 14, 2021, nearly ten years after her guilty plea, Gristina filed a motion with Justice Merchan requesting that he unseal various transcripts from proceedings related to her criminal case. The January 14th motion requested the unsealing of four transcripts and any documents related to those transcripts.[1] In the page-and-a-half brief submitted with her January 14th motion, Gristina argued only that, pursuant to the Sixth Amendment and New York's due process clause, she "ha[d] a right to view, or copy, any Court Document, or Court Record . . . in order to put on a defense, to take legal action with regard to [her] case, or to [receive] counsel . . . about prospective legal matters." Joint App'x at 24. The New York District Attorney's Office opposed the motion to unseal.

On March 22, 2021, Justice Merchan issued an order addressing Gristina's various unsealing requests. The court's order noted that one of the requested transcripts was not sealed and another most likely should not have been sealed and would be reviewed *in camera* to confirm. This left three documents: a September 25, 2012 transcript, an August 13, 2012 transcript, and an August 16, 2012 transcript.

---

[1] On March 12, 2021, Gristina added a request to unseal one additional transcript, and unredacted copies of a search warrant, a search warrant affidavit, and all related minutes, bringing the total requested transcripts to five.

As to the September 25th transcript, Justice Merchan observed that it had been "transcribed by a Court Reporter who is no longer employed by the Office of Court Administration. The transcript has been ordered from storage, and once retrieved, the supervising Court Reporter will determine whether it is sealed." Joint App'x at 15.

The remaining two transcripts Gristina sought related to proceedings in which she was not directly involved. The court noted that the sealed August 13th transcript "involve[d] the co-defendant exclusively ([Gristina] was not present*)."* *Id.* at 13. The sealed August 16th transcript "involve[d] an *ex parte* matter."[2] *Id.* The court's order noted that, due to a clerical error, the court reporter had already provided Gristina with copies of the sealed transcripts from August 13th and 16th. After noting that "[i]nherent power exists in rare instances for a court to seal its records and, in cases that are still rarer, to unseal them," Justice Merchan concluded that Gristina had failed "to meet her burden to demonstrate why the sealed minutes of August 13th and 16th should be unsealed." *Id.* at 14. He also concluded that Gristina had not provided justification for remaining in possession of the mistakenly released transcripts. *Id.* Accordingly, Justice Merchan ordered

---

[2] Another August 16th transcript from a "calendar call at which [Gristina] appeared, and certain pre-trial matters were discussed on the record" was unsealed. Joint App'x at 13.

that the August 13th and 16th transcripts remain sealed and that Gristina return the copies of them that she had erroneously received. *Id.* at 14–15.

On June 7, 2021, Gristina filed a petition for a writ of prohibition or mandamus pursuant to New York Civil Practice Law and Rules section 7801 ("the Article 78 petition") with the New York State Supreme Court, Appellate Division, First Department, requesting a judgment requiring unsealing of the August 13th, August 16th, and September 25th transcripts.[3] The Article 78 petition named, among others, Justice Merchan, and then-District Attorney of New York County Cyrus Vance, as defendants and asserted federal due process and equal protection claims. The First Department denied and dismissed the Article 78 petition without comment on October 14, 2021; and on January 11, 2022, it denied Gristina's motion for leave to appeal. On June 16, 2022, the New York Court of Appeals denied

---

[3] Gristina moved for a writ of mandamus, i.e., a civil remedy, rather than directly appealing Justice Merchan's order because the right to review of sealing orders entered in criminal proceedings is not explicitly authorized by statute. *See Harper v. Angiolillo*, 89 N.Y.2d 761, 768 (1997) (noting that no statutory authority exists allowing the appeal of a Criminal Term of County Court's denial of an unsealing motion); *Hynes v. Karassik*, 47 N.Y.2d 659, 661 n.1 (1979) (noting in a case involving a motion to unseal criminal records that "[i]f the appeal is being taken from an order entered in a 'criminal proceeding', we would be required to dismiss inasmuch as there is apparently no statutory authority for such an appeal"); *Santangello v. People*, 38 N.Y.2d 536, 538 (1976) ("The right to appeal in criminal cases is determined exclusively by statute[.]"); *see also* N.Y. Crim. Proc. Law § 1.20(18) ("'Criminal proceeding' [includes] any proceeding which . . . occurs in a criminal court and is related to a . . . completed criminal action[.]").

Gristina's motion for leave to appeal. *Gristina v. Merchan*, 38 N.Y.3d 910, 910 (2022) (unpublished disposition).

On October 20, 2021—after the First Department's denial and dismissal of the Article 78 petition but *before* the First Department's denial of leave to appeal that denial and *before* the Court of Appeals's June 16, 2022 denial of leave to appeal—Gristina filed this action under 42 U.S.C. § 1983 in the Southern District of New York. The § 1983 suit again named Justice Merchan and then-District Attorney Vance as defendants in their official capacities.[4] Like the Article 78 petition, the federal suit claimed that Vance's opposition to and Justice Merchan's denial of Gristina's motion to unseal violated her federal due process and equal protection rights. The federal suit sought injunctive and declaratory relief ordering unsealing of the transcripts. Bragg and Justice Merchan moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to *Younger* abstention, and alternatively to the *Rooker-Feldman* rule, and for failure to state a claim due to judicial and prosecutorial immunity.

---

[4] By operation of Federal Rule of Civil Procedure 25(d), Defendant-Appellee Bragg was automatically substituted as a defendant in lieu of Vance after Bragg assumed the office of District Attorney for New York County in 2022.

The district court dismissed Gristina's complaint without prejudice on May 19, 2022 (Crotty, *J.*). The district court concluded that *Younger* abstention was warranted because the Article 78 petition, which was still pending appeal in state court, involved the decision to seal or unseal transcripts—"a quintessentially judicial function." Joint App'x at 202. Alternatively, the district court held that the *Rooker-Feldman* doctrine prohibited direct review of the state trial court's order denying unsealing because it was a final state court judgment.

This appeal followed.

## DISCUSSION

The *Younger* abstention doctrine embodies the "longstanding public policy against federal court interference with state court proceedings." *Younger*, 401 U.S. at 43. Though "[i]n the main, federal courts are obliged to decide cases within the scope of federal jurisdiction," *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013), "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.'" *NOPSI*, 491 U.S. at 359 (quoting *Younger*, 401 U.S. at 45). Out of this deference to state comity, *Younger* and its progeny have identified three categories of "exceptional" situations in which the prospect "of undue interference with state

proceedings" triggers *Younger* abstention. *Id*. at 359, 367–68. Those three categories are: (1) where there is a pending state criminal prosecution; (2) where there is a pending civil enforcement proceeding; or (3) where there is a pending civil proceeding "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 72–73 (quoting *NOPSI*, 491 U.S. at 367–68). Specifically, we have observed that "federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments." *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022).

At issue in this appeal is whether Gristina's Article 78 petition, which was pending at the time her federal suit was filed and sought unsealing of records in her decade-old New York criminal case, falls within *Younger*'s third category. More specifically, the question is whether the Article 78 petition was a pending proceeding "uniquely in furtherance of the state court['s] ability to perform [its] judicial functions." *Sprint*, 571 U.S. at 73 (quoting *NOPSI*, 491 U.S. at 368). We review a district court's abstention decision under the *Younger* doctrine *de novo*. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 90 (2d Cir. 2004). Applying our precedent to this case, we hold that because the act of ordering the sealing (or

unsealing) of state court files is a state court process uniquely in furtherance of judicial functions, the district court properly abstained under *Younger*.

As a threshold matter, we must consider whether the Article 78 petition was a pending civil proceeding for purposes of *Younger* abstention. A civil proceeding is pending if further state appellate remedies are available at the time of filing the federal complaint. *See Hansel v. Town Ct. for Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2d Cir. 1995) (noting that there was "an ongoing state proceeding" for purposes of *Younger* abstention where the state action was still pending at the time plaintiff "brought this action before the district court"); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975) ("[A]ll of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings[.]"). The Dissent argues that *Younger* should be inapplicable if the state court proceedings, which were pending at the time of the federal filing, become final *at any point* during the federal proceeding. *See Post* at 9–12. Our Court's case law, however, clearly indicates that the *Younger* abstention issue is evaluated at the time of filing, and it is not continuously re-evaluated throughout

11

the pendency of a proceeding.[5]  *See Hansel*, 56 F.3d at 393 ("*Younger* applies if state prosecution was pending at the time of *filing* of federal action."  (citing *Dubinka v. Judges of Superior Ct. of the State of Cal. for the Cnty. of L.A.*, 23 F.3d 218, 223 (9th Cir. 1994))); *Cecos Intern., Inc. v. Jorling*, 895 F.2d 66, 72 (2d Cir. 1990) (finding *Younger* abstention inapplicable "when there is no state action pending at the time the federal suit is filed").

---

[5] The Dissent relies on two cases, *Silva v. Farrish*, 47 F.4th 78 (2d Cir. 2022), and *Pathways, Inc. v. Dunne*, 329 F.3d 108 (2d Cir. 2003), to argue that our Circuit recognizes "that *Younger* does not apply when the state proceedings are no longer ongoing."  *See Post* at 10.  This reliance is misplaced.  In both *Silva* and *Pathways*, the plaintiffs sought to enjoin ongoing state court proceedings against them—but in both cases, those state proceedings had ended.  *See Silva*, 47 F.4th at 89; *Pathways*, 329 F.3d at 113–14.  The Court thus found that the claims for injunctive relief *themselves* were moot, and therefore the *Younger* abstention issue was simply no longer relevant—not that *Younger* itself required the state court proceeding to be extant through the entirety of the federal court proceedings.  *See Silva*, 47 F.4th at 89 ("Although there was an ongoing state prosecution when Silva filed his federal complaint, that proceeding has now ended.  Silva's first claim—and the *Younger* issue associated with it—is therefore moot."); *Pathways*, 329 F.3d at 114 ("Pathways' claims for injunctive relief against Brookridge Defendants, at least insofar as those claims dealt with state cases pending when the District Court ruled, are now moot because those cases are concluded.").

To be sure, both *Silva* and *Pathways* recognized that *Younger* did not bar plaintiffs' claims for injunctive relief from *future* suits.  *See Silva*, 47 F.4th at 89 ("Those forward-looking claims were not barred because *Younger* is not a bar to federal court action when state judicial proceedings have not themselves commenced." (internal quotation marks omitted)); *Pathways*, 329 F.3d at 114 ("To the extent that Pathways' injunctive claims seek relief from future suits, they are neither moot nor removed from federal jurisdiction by . . . *Younger* principles.").  Gristina, however, is not seeking relief from a future action by a New York State court, but rather relief from particular final judgments in a civil proceeding that was pending at the time she filed her suit.

12

This makes sense. "*Younger* generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction." *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (internal quotation marks omitted). The Dissent's position on the timing of *Younger*'s application would result in such friction. If *Younger* abstention is to be evaluated at the time of a federal court's decision, rather than solely at the time of filing, one of two outcomes is likely to occur. Federal district courts would properly abstain under *Younger* when a suit was filed, but would be consistently reversed by the Circuit because the state proceeding would have likely ended by the time the case reached the Circuit. Alternatively, to avoid this consistent reversal, federal district courts would sit on their hands, waiting to issue decisions until the state proceedings came to an end and *Younger* became inapplicable. Both outcomes would result in a federal court proceeding looming over the state court proceeding. From the perspective of the litigants, this rule would create an incentive for plaintiffs to file duplicative proceedings in federal court before the end of their state court proceedings, hoping that by the time the district or circuit court ruled on the merits, the state court proceedings would have ended. All of these situations

would hamper one "fundamental purpose" of *Younger* abstention: "avoid[ing] a duplication of legal proceedings." *Younger*, 401 U.S. at 44.

The *Younger* doctrine, as the Dissent notes, "is a rule of comity that aims to avoid interference with certain ongoing state proceedings." *Post* at 9. This notion of comity serves to ensure "proper respect for state functions." *Younger*, 401 U.S. at 44. However, adopting the Dissent's rule, and allowing a federal court proceeding to loom over the state court proceeding, would not treat the federal and state systems as "co-equal sovereigns"—nor would it "enhance[] the dignity of the state sovereign." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002) ("Federal interference with state proceedings, because it necessarily presumes that state court review will be inadequate, affronts the dignity of the state sovereign.").

At the time she filed the complaint in federal court, Gristina had yet to receive a decision regarding her motion for leave to appeal the Article 78 denial. *See Gristina*, 38 N.Y.3d at 910. "Indeed, given the early stage at which [Gristina] sought federal court intervention, it is possible that [her petition] could have been favorably resolved, thus obviating the need to address the [] question[s] raised before the district court." *Hansel*, 56 F.3d at 393. The state court matter, therefore,

14

remained pending at the time of filing, and the district court properly considered whether *Younger* abstention should apply.

Of course, it is not enough for *Younger* abstention that Gristina's Article 78 petition was pending at the time of filing her federal suit; the petition also must fit into one of the three *Younger* categories justifying "the withholding of authorized equitable relief because of undue interference with state proceedings." *NOPSI*, 491 U.S. at 359. *Younger*'s first and second categories—pending state criminal prosecutions and pending civil enforcement proceedings—plainly do not apply here. Thus, whether the district court properly abstained under *Younger* depends on whether the Article 78 petition to order a court to unseal its own records falls into *Younger*'s third category, i.e., whether the denial of the unsealing request was uniquely in furtherance of the state court's ability to perform its judicial function.

Contrary to Gristina's primary argument on appeal, we conclude that both the underlying order sealing records from her criminal proceeding, and by extension the Article 78 petition to unseal those records, are uniquely in furtherance of the state court's ability to perform its judicial function.[6] In her

---

[6] In addition, Gristina argues for the first time on appeal that "great and immediate irreparable harm" and Defendants-Appellees' alleged bad faith compel an exception to *Younger* abstention. Appellant's Br. at 19. "[I]t is a well-established general rule" that we

15

Article 78 petition, Gristina was asking a New York State appellate court to order State Supreme Court Justice Merchan to unseal transcripts he had previously determined were properly sealed. Case law supports a finding that such state court sealing orders are "uniquely in furtherance" of a court's judicial functions because they are critical to the court's administration of its cases, its recordkeeping, and its ability to maintain the integrity and, when necessary, the confidentiality of its proceedings.

Although the Supreme Court has not comprehensively defined what it means for a pending civil proceeding to be "uniquely in furtherance of" a state court's ability to perform its judicial function, two decisions, which identify civil

"will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). Gristina also argues that *Younger* abstention was inappropriate because the state court could not have addressed the relevant federal claims or provided the requested relief. Yet Gristina's Article 78 petition disproves this claim, as it challenged the order denying unsealing on the same federal constitutional grounds as her federal complaint, and Gristina does not explain why a favorable outcome on her Article 78 petition, i.e., a writ of prohibition or mandamus requiring unsealing, would not also have vindicated her federal constitutional rights. *See Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 71 (2d Cir. 1990) ("[T]he question of whether the statute has been *applied* in an unconstitutional fashion may be raised directly in an Article 78 proceeding."); *accord Samuels v. Mackell*, 401 U.S. 66, 73 (1971) (holding that the *Younger* doctrine requires dismissal of claims for both injunctive and declaratory relief because "the basic policy against federal interference with pending state [proceedings] will be frustrated as much by a declaratory judgment as it would be by an injunction"). In other words, Gristina's § 1983 claim is essentially a direct appeal of the state court's decision to a federal court.

16

contempt orders, *Juidice v. Vail*, 430 U.S. 327 (1977), and post-civil judgment bond and lien requirements, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), as falling within *Younger*'s third category, are the points from which our analysis starts. As the Supreme Court has explained, civil contempt orders and post-judgment bond and lien requirements are uniquely in furtherance of a state court's judicial function because they are "processes by which the State compels compliance with the judgments of its courts," *Pennzoil*, 481 U.S. at 14–15, and they implicate the "State's interest in protecting the 'authority of the judicial system, so that its orders and judgments are not rendered nugatory,'" *id.* at 14 n.12 (quoting *Juidice*, 430 U.S. at 336 n.12). From *Juidice* and *Pennzoil*, we take the lesson that "the *processes* by which the State compels compliance with the judgments of its courts" are due *Younger* abstention. *Cavanaugh*, 28 F.4th at 434 (quoting *Pennzoil*, 481 U.S. at 13–14).

The Dissent seems to suggest that the Supreme Court primarily intended to cabin *Younger*'s third category to cases "involv[ing the] 'coercive enforcement' of the state's judicial orders." *Post* at 5 (quoting *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 69 n.9 (1st Cir. 2005)); *see also Post* at 7 (suggesting that *Younger* abstention does not apply in this case, in part, because "[t]he orders declining to

17

unseal the transcripts were not coercive"). Yet, the Dissent acknowledges that the Supreme Court has *rejected* the notion that whether a pending civil enforcement proceeding is within *Younger*'s ambit depends on "whether the underlying state proceeding is 'coercive' rather than 'remedial.'" *Sprint*, 571 U.S. at 80 n.6; *see Post* at 5. The Supreme Court concluded that such an inquiry was neither "necessary [n]or inevitably helpful, given the susceptibility of the designations to manipulation." *Sprint*, 571 U.S. at 80 n.6 And though the Supreme Court made this observation in the context of *Younger*'s second category—civil enforcement proceedings—it undercuts the idea that coercion is necessary for *Younger* abstention under any category.

While admitting that a coercive order is not required, the Dissent nonetheless argues that "the third *Younger* category involves orders by which the state compels compliance with its judgments." *Post* at 5. The Dissent suggests that this Circuit has applied the third *Younger* category only "to cases involving *enforcement* of state court judgments." *Post* at 6 (emphasis added). However, we have held that when an order involves the "*way*" that a state court manages its proceedings in a "subject[-area] in which the state[] ha[s] an especially strong interest," it is "integral to the State court's ability to perform its judicial function."

*Falco v. Justs. of the Matrim. Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427–28 (2d Cir. 2015) (emphasis added) (internal quotation marks omitted). Therefore, a challenge to this type of integral order, and not merely the enforcement of the underlying state court judgment, is "clearly" within *Younger*'s third category. *Id.* at 428. Thus, in *Falco*, we concluded that a pending state proceeding that involved an order requiring a parent to pay the fee for their child's court-appointed attorney in a family court proceeding was entitled to *Younger* abstention because (i) the order implicated the way New York courts manage their divorce and custody proceedings, an area in which (ii) the State has an especially strong interest. *Id.* at 427–28.

Our Court's decision in *Cavanaugh* confirms this reading of *Falco*. In that case, we described *Younger*'s third category as encompassing *both* challenges to "*processes* by which the State compels compliance with judgments of its courts" *and* challenges to "*the way* that New York courts manage their own . . . proceedings." *Cavanaugh*, 28 F.4th at 434 (first quoting *Pennzoil*, 481 U.S. at 13–14, then quoting *Falco*, 805 F.3d at 427); *see also id.* at 430 (holding that "*Younger* abstention applies only to a narrow class of state civil proceedings"—those that "protect[] the State's administration of its judicial system *or* its process for

compelling compliance with the judgments of its courts" (emphasis added)). While the Dissent appears to characterize *Cavanaugh* as concerning "'administrative processes, powers, and functions'" only in so far as they are relevant to when "'the state courts [] adjudicate the matters before them and enforce their judgments,'" *Post* at 7 (quoting *Cavanaugh*, 28 F.4th at 434), nothing in that decision restricts application of the third *Younger* category to instances involving the *actual enforcement* of the state court judgment. To the contrary, *Cavanaugh* makes clear that even challenges to "the [state] court's basic *authority* to enforce its orders" is of concern. 28 F.4th at 434 (emphasis added).

Therefore, following *Falco*, Gristina's pending civil proceeding regarding the sealing and unsealing of materials in a state court criminal proceeding clearly meets these requirements for *Younger*'s third category, i.e., that it implicates the way a New York court manages its proceedings in an area in which the state has an especially strong interest.

First, there is no doubt that a challenge to an order denying unsealing is fundamentally a challenge "to *the way* that New York courts manage their own . . . proceedings." *Id.* (quoting *Falco*, 805 F.3d at 427). Sealing court records is one of dozens of procedural decisions that are necessarily made by a state court in any

20

given case to manage and advance its own proceedings. In *Falco*, for example, this Court observed that a court's ability to select and provide for the compensation of counsel in divorce and custody proceedings was "integral to the State court's ability to perform its judicial function." 205 F.3d at 428. The principle was simple: in order for a court to move its proceedings along efficiently, effectively, and fairly, it must be able to ensure adequate representation of the parties. Similarly, the choice to seal or disclose sensitive records and proceedings is the very sort of decision that a court must make to efficiently conduct its business while balancing the "right to access against the need to either protect witnesses or ensure the defendant's right to a fair trial." *In re Daily News, L.P. v. Wiley*, 126 A.D.3d 511, 513 (1st Dep't 2015). This is why the act of sealing and disclosing records falls "within the inherent power of the court to control the records of its own proceedings." *Id.* at 512; *see also Mancheski v. Gabelli Grp. Cap. Partners*, 39 A.D.3d 499, 502 (2d Dep't 2007) (holding that "good cause" to seal documents requires "prudent exercise of the court's discretion, and thus a case-by-case analysis is warranted") (internal quotation marks and citation omitted).

Second, decisions to unseal implicate the significant interest that "[e]very court," including every state court, has in exercising "supervisory power over its

21

own records and files." *Nixon v. Warner Commc'ns*, Inc., 435 U.S. 589, 598 (1978); *see Spargo*, 351 F.3d at 75 ("[F]ew interests can be considered more central than a state's interest in regulating its own judicial system.").[7] The courts of New York have long recognized this power to control their records as one that "inheres in the very constitution of the court." *Dorothy D. v. N.Y.C. Prob. Dep't*, 49 N.Y.2d 212, 215 (1980) (quoting *Vanderbilt v. Schreyer*, 81 N.Y. 646, 648 (1880)). The authority to decide the necessity of sealing records in a criminal proceeding is extremely important to the State, as it involves balancing the right of access to courts with, among other things, a "defendant's Sixth Amendment right," *In re Daily News, L.P.*, 126 A.D.3d at 512, the safety of alleged victims, and the protection of confidential law enforcement investigative procedures. *See, e.g.*, *United States v. Cojab*, 996 F.2d 1404, 1408 (2d Cir. 1993) (noting that sealing and closure may be warranted when

---

[7] On appeal, Gristina argues that there cannot be a sufficient state interest in a court's power to seal because the New York Legislature "codified the State's interest" in parties "purchas[ing] a transcript" by enacting New York Judiciary Law section 300. *See* Appellant's Br. at 16. Section 300 directs the stenographer to, "upon the payment of his fees allowed by law therefor, furnish a certified transcript . . . in any case reported by him, to any party to the action." N.Y. Jud. Law § 300. Gristina contends that, read strictly, because the power to seal is not included in the statute, it cannot be read into it. *See, e.g.*, *Lawrence Constr. Corp. v. State*, 293 N.Y. 634, 639 (1944) (holding that a court must not read implicit powers into statutes unless absolutely necessary). However, when considering section 300 in its context, we observe that it exists within Article 9 of the New York Judiciary Law, which specifically concerns stenographers. *See* N.Y. Jud. Law § 290. Gristina points to no case which has read section 300 to give an implied power to stenographers to override the power of a court to seal records, and we will not do so here.

"an ongoing government investigation may be jeopardized or where publicity might put at risk the lives or safety of government agents engaged in undercover activities"); *Crain Commc'ns, Inc. v. Hughes*, 74 N.Y.2d 626, 628 (1989) (holding that the decision to seal "must, by its very nature, involve the balancing of competing interests, an inquiry which obviously involves a measure of discretion"). In the same way that the orders providing for court-appointed counsel in *Falco* were "integral to the State court's ability to perform its judicial function in divorce and custody proceedings," *Falco*, 805 F.3d at 428, an order to seal or unseal is integral to a state court's ability to "control the records of its own proceedings," *In re Daily News, L.P.*, 126 A.D.3d at 512, and perform its judicial function in any proceeding that may require secrecy, *see Nixon*, 435 U.S. at 598 (noting various circumstances in which "the common-law right of inspection" may need to "bow[] before the power of a court" to seal its records).

A court's decision to seal or unseal materials to protect the integrity of sensitive criminal proceedings is part of the very core "processes, powers, and functions" of a state court with which *Cavanaugh* warns we should not interfere. 28 F.4th at 434. Gristina asks this Court to overturn a state court's considered judgment and order it to unseal its own judicial records. If we were to comply

23

with her request, we would reach into the fray of what was an ongoing state civil action and act as a *de facto* appellate court, meddling with important and considered internal administrative decisions that are made by a state court to manage its own proceedings. Setting such a precedent would effectively invite state court litigants to impede state court proceedings by creating "duplicative legal proceedings" in federal court, *Huffman*, 420 U.S. at 604, whenever they were unhappy with a state court's procedural order in a pending case. This would undermine a "vital consideration" underlying the *Younger* doctrine: "an aspect of federalism which [the Supreme Court] described as the notion of comity, that is, a proper respect for state functions . . . and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 601 (internal quotation marks omitted).

Intervening at this stage in an area where the State has a particularly strong interest would implicate "[v]irtually all of the evils at which *Younger* is directed." *Id.* at 608. Under these circumstances, the district court properly refrained from exercising jurisdiction over Gristina's claims.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's dismissal of Gristina's complaint.  Because we affirm on the basis of *Younger* abstention alone, we do not reach Gristina's remaining arguments regarding the district court's application of the *Rooker-Feldman* rule.  *See Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014) ("We may . . . affirm on any ground with support in the record.").

MENASHI, *Circuit Judge*, dissenting:

Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). For that reason, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813.

The Supreme Court has defined that exception narrowly to cover only "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Commc'ns., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). The *Younger* abstention doctrine provides that "[w]hen there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Id.*; *see Younger v. Harris*, 401 U.S. 37 (1971). The Supreme Court "has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions or that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint*, 571 U.S. at 72-73 (citation omitted). In doing so, however, the Court has "stressed" that "[c]ircumstances fitting within the *Younger* doctrine ... are 'exceptional.'" *Id.* at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* (*NOPSI*), 491 U.S. 350, 368 (1989)). And it has "cautioned ... that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refuse to decide a case in deference to the States.'" *Id.* (alteration omitted) (quoting *NOPSI*, 491 U.S. at 368).

This case, involving the pedestrian question of whether the plaintiff is entitled to obtain transcripts from a proceeding that ended over a decade ago, does not involve exceptional circumstances. Nor was the decision of the state court to deny her those transcripts an

order "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* (quoting *NOPSI*, 491 U.S. at 368). The New York courts will carry on just as well even if a federal court decides whether Anna Gristina has a right to see the transcripts.

The Supreme Court has warned that federal courts must not extend *Younger* to "virtually all parallel state and federal proceedings" simply because a party can "identify a plausibly important state interest." *Id.* at 81. "*Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*," the Court has emphasized, "*but no further*." *Id.* at 82 (emphasis added). Because the court fails to heed that warning, I dissent.

**I**

In 2012, Gristina and a co-defendant pleaded guilty in New York state court to third-degree promotion of prostitution. Gristina was sentenced to six months of incarceration and five years of probation. Gristina now wants to vacate her criminal conviction on the ground that "her guilty plea was coerced." J. App'x 3. Nine years after pleading guilty, Gristina moved in the trial court to unseal transcripts from her criminal case, which she hoped would support her effort to vacate her conviction. Acting Justice Juan Merchan denied the motion.

Gristina then filed a mandamus petition under Article 78 of New York's Civil Practice Law and Rules seeking to compel Merchan to unseal the transcripts. The Appellate Division, First Department, dismissed her petition. After that dismissal—but before the First Department denied her leave to appeal to the New York Court of Appeals—Gristina brought suit in federal court against Merchan and the district attorney of New York County, who had opposed her motion to unseal. Her complaint requested "injunctive relief directing

2

the Defendants to allow the Plaintiff to pay for, and obtain, the unsealed court minutes in her criminal case" as well as "a declaratory judgment stating that the Plaintiff is entitled to the unsealed court minutes in her criminal case." *Id.* at 8. Gristina alleged that the withholding of the transcripts violated her Fourteenth Amendment rights, including her right under the Due Process Clause to access the courts.

The district court decided that—because the First Department's dismissal of Gristina's Article 78 petition was still subject to appeal at the time she filed her federal suit—*Younger* required the federal court to dismiss her suit in order to avoid "interfering in ongoing state proceedings." *Gristina v. Merchan*, No. 21-CV-8608, 2022 WL 1597732, at *2 (S.D.N.Y. May 19, 2022) (quoting *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003)). The district court determined that "[a] court's order to seal or unseal its own transcripts falls within the 'core state court civil administrative processes, powers, and functions' that make up the third category of *Younger* abstention." *Id.* at *3 (footnote omitted) (quoting *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022)). Gristina's suit "challenges *the way* that New York courts manage their own criminal proceedings," the district court explained, and therefore threatened to "impede the normal course of proceedings in the state courts." *Id.* (internal quotation marks and alteration omitted). Indeed, allowing her suit to go forward would imperil the operations of the state courts: "Without the ability to maintain confidentiality during certain proceedings, state courts could not 'adjudicate the matters before them' lest public disclosure chill the candor those courts depend upon." *Id.* (quoting *Cavanaugh*, 28 F.4th at 434). Gristina timely appealed.

3

## II

The *Younger* abstention doctrine rests primarily on considerations of comity, which "includes 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *NOPSI*, 491 U.S. at 364 (quoting *Younger*, 401 U.S. at 44). The district court incorrectly treated *Younger* abstention as a limitation on subject matter jurisdiction.[1] In fact, "*Younger* is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006) (quoting *Spargo*, 351 F.3d at 74). Nevertheless, it is one of those "threshold grounds" on which a federal court may rely "for denying audience to a case on the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999). But it applies only in limited and extraordinary circumstances not present here.

## A

A state proceeding in which a party seeks to obtain transcripts from her long-ago-closed criminal case is not a "civil proceeding[] involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. at 368. To illustrate that third category of cases to which *Younger* applies, the Supreme Court cited two cases: *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977), and *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987). These cases involved, respectively, a "civil contempt order" and the

---

[1] *See Gristina*, 2022 WL 1597732, at *6 (identifying "two independent jurisdictional reasons to dismiss").

4

"requirement for the posting of [a] bond pending appeal." *NOPSI*, 491 U.S. at 368. As the First Circuit has explained, these cases involved "coercive enforcement" of the state's judicial orders, and "it was the 'importance to the States of enforcing the orders and judgments of their courts' that was sufficient to bring *Younger* considerations into play." *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 69 n.9 (1st Cir. 2005) (quoting *Pennzoil*, 481 U.S. at 13). The suit in *Pennzoil*—which represents "the Supreme Court's furthest extension of the type of proceedings to which *Younger* applies"—still "involved a 'challenge to the processes by which the State compels compliance with the judgments of its courts.'" *Id.* (alteration omitted) (quoting *Pennzoil*, 481 U.S. at 13-14). Whether the state proceedings might be described as "coercive" or "remedial," the proceedings must "implicate a State's interest in *enforcing* the orders and judgments of its courts." *Sprint*, 571 U.S. at 72-73 (emphasis added).

Other circuits agree that the third *Younger* category involves orders by which the state compels compliance with its judgments. *See Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 330 (4th Cir. 2022) ("*Pennzoil*, the Court explained, was like *Juidice* in that it involved challenges to the processes by which the State compels compliance with the judgments of its courts. And enjoining that process would not only interfere with the execution of state judgments, but do so on grounds that challenge the very process by which those judgments were obtained.") (internal quotation marks, alterations, and citation omitted); *375 Slane Chapel Rd., LLC v. Stone County*, 53 F.4th 1122, 1127 (8th Cir. 2022) ("Both [cases] involved challenges to the process by which a State compels compliance with the judgments of its courts."); *Elna Sefcovic, LLC v. TEP Rocky Mt., LLC*, 953 F.3d 660, 671 (10th Cir. 2020) ("[B]oth *Juidice* and *Pennzoil* involved requests to directly or indirectly thwart state court compliance processes.").

5

Our court likewise has applied the third *Younger* category to cases involving enforcement of state court judgments. In *Falco v. Justices*, 805 F.3d 425 (2d Cir. 2015), a husband involved in divorce proceedings sued justices of the Matrimonial Parts of the New York Supreme Court, Suffolk County, under 42 U.S.C. § 1983 to challenge the constitutionality of the New York laws that authorize state judges to order parents to pay for the attorneys appointed for their children. *See id.* at 426-27. We held that *Younger* abstention was warranted because "Falco's federal lawsuit implicates the way that New York courts manage their own divorce and custody proceedings—a subject in which 'the states have an especially strong interest.'" *Id.* at 427 (quoting *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973)). The state court had ordered Falco to "pay half the fees of the attorney appointed to represent his children in the divorce proceeding," *id.* at 428, and Falco's defiance of that order led to a further order to show cause why he should not be held in contempt. For a federal court to entertain a challenge to the fees order—while the divorce proceedings were ongoing—would implicate the state's ability to enforce compliance with its procedures and judgments.

More recently, in *Cavanaugh v. Geballe*, 28 F.4th 428 (2d Cir. 2022), we "clarif[ied] that *Younger* abstention applies only to a narrow class of state civil proceedings"—those that "protect[] the State's administration of its judicial system or its process for compelling compliance with the judgments of its courts." *Id.* at 430. The plaintiff sued under § 1983 to challenge a state probate court's order recognizing the validity of a state lien on his interest in his grandmother's estate. *Id.* at 431. The district court abstained under *Younger*. We reversed because "[t]he broad conclusion that *Younger* abstention requires a federal court to abstain whenever an action

6

might interfere with a probate court's oversight function does not follow from either *Sprint* or *Falco*." *Id.* at 433. Relying on the illustrative examples of *Juidice* and *Pennzoil*, we said that "[w]e learn from these cases that federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that *allow the state courts to adjudicate the matters before them and enforce their judgments*." *Id.* at 434 (emphasis added). We emphasized that "*Younger* abstention does not prevent a federal court from exercising its jurisdiction simply because its decision might contradict a state court decision." *Id. Younger* abstention is improper when "there is no record of non-compliance with the [state] court's orders," "neither party challenges the [state] court's basic authority to enforce its orders or adjudicate the matters before it," and "the related federal suit would not hinder the [state] court's basic authority to enforce its orders." *Id.*

Like the state probate court proceedings in *Cavanaugh*, the state proceedings in this case over whether to unseal old transcripts fall "within none of the exceptions that *Younger* or *Sprint* established." *Id.* The orders declining to unseal the transcripts were not coercive—and were not even part of a larger ongoing judicial proceeding. Gristina was not required to do anything; she was simply denied access to the sealed transcripts. In prior cases falling under the third *Younger* category, the federal plaintiff had risked contempt or had been held in contempt in the state court. *See, e.g., Juidice*, 430 U.S. at 329-30; *Falco*, 805 F.3d at 426. Nothing like that happened—or is even possible— here. And even if it were possible, Gristina had no record of noncompliance with state court orders; she even returned the transcripts mistakenly issued to her when asked to do so.

More fundamentally, Gristina did not challenge the state court's basic authority to enforce its orders, and her federal suit would

not hinder that authority. Even if a federal court were to conclude that Gristina had a constitutional right to access the transcripts from her prior proceeding to prepare a future case, there would be no unwarranted interference with the New York courts; the state courts are expected to operate in accordance with constitutional requirements, including some constitutional requirements that mandate the disclosure of court records the state has otherwise determined should be sealed. *See, e.g.*, *Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 221 (2d Cir. 2021) (recognizing "a qualified First Amendment right to access records and proceedings" in cases transferred from the juvenile to the regular criminal docket that the state had sealed).

Gristina's prior prosecution is complete. For a federal court to consider whether she should have access to court records—ten years after the fact—would not interfere at all with the state court's ability to enforce its judgment of conviction or to command Gristina's compliance with the judicial process. If these state proceedings over the accessibility of old transcripts represent the sort of "exceptional" circumstances warranting abstention, it is hard to imagine what state proceedings would not also qualify. We know that federal courts must not extend *Younger* to "virtually all parallel state and federal proceedings" whenever a party can "identify a plausibly important state interest." *Sprint*, 571 U.S. at 81. Yet that is what the district court did, and what the court endorses today. We previously vacated a district court's decision when it "appear[ed] to have misunderstood the narrow scope of *Younger*," *Cavanaugh*, 28 F.4th at 430, and I would follow that course here.

8

**B**

Even if the district court did not err in deciding that abstention was warranted while the state proceedings were ongoing, it still erred in abstaining after the state proceedings were complete. The district court observed that "the state proceeding was still 'pending' at the time Gristina began this case." *Gristina*, 2022 WL 1597732, at *4. It then held that "[t]he fact that permission to appeal was subsequently denied is irrelevant; the Court must consider abstention as of the date the federal Complaint was filed." *Id.*

That was erroneous. *Younger* abstention is a rule of comity that aims to avoid interference with certain ongoing state proceedings. *See Spargo*, 351 F.3d at 74. As the Supreme Court has explained, "[t]he issue of whether federal courts should be able to interfere with ongoing state proceedings is quite distinct and separate from the issue of whether litigants are entitled to subsequent federal review of state-court dispositions of federal questions." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 606 (1975). Therefore, while "*Younger* standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his state appellate remedies," *id.* at 609, *Younger* is "inapplicable" when "there are no longer pending state proceedings" and the plaintiff's claim has "run the course of [the state] judicial system," *Bass v. Butler*, 258 F.3d 176, 179 (3d Cir. 2001). *Younger* abstention "provides for federal deference to ongoing, not completed, parallel state proceedings." *Id.*; *see* 17B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4253 (3d ed.) ("If a state proceeding was pending at a time that invokes the

9

*Younger* rules, those rules remain applicable *through the completion of all state appellate remedies.*") (emphasis added).[2]

We have recognized in our own cases that *Younger* does not apply when the state proceedings are no longer ongoing. *See Silva v. Farrish*, 47 F.4th 78, 89 (2d Cir. 2022) ("Although there was an ongoing state prosecution when Silva filed his federal complaint, that proceeding has now ended. … [T]he *Younger* issue … is therefore moot."); *Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003) ("[T]he state proceedings that gave rise to the District Court's *Younger* concerns are no longer pending. … The dismissal of Pathways' claim for declaratory relief is now not warranted, even if it was appropriate when the District Court ruled."). Because Gristina's claim had "run the course of [New York's] judicial system" at the time the district court rendered its decision, its decision to abstain was erroneous. *Bass*, 258 F.3d at 179. In short, "*Younger* … does not apply to this case because the state proceedings were completed by the time the district court took action on the merits." *Guarino v. Larsen*, 11 F.3d 1151, 1157 n.1 (3d Cir. 1993). "The United States Supreme Court has never applied *Younger* in such a situation." *Id.*

It is the *jurisdiction* of the district court—not the decision whether to abstain—that depends on "the state of things" that existed "at the time the action was brought." *Mollan v. Torrance*, 22 U.S. (9 Wheat) 537, 539 (1824). "*Younger* is not a jurisdictional bar" but "a prudential limitation on the court's exercise of jurisdiction grounded

---

[2] *See also Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 740-41 (7th Cir. 2016) ("Between the district court's ruling and this appeal, Mary died, so her probate proceeding is terminated. As a result of Mary's death, *Younger* is now a moot question because there is no ongoing state proceeding for us to disturb.").

10

in equitable considerations of comity." *Spargo*, 351 F.3d at 74; *see also Schachter v. Whalen*, 581 F.2d 35, 36 n.1 (2d Cir. 1978) ("*Younger* abstention goes to the exercise of equity jurisdiction, not to the jurisdiction of the federal district court as such to hear the case."). The "considerations of equity practice and comity in our federal system" on which *Younger* is based "have little force in the absence of a pending state proceeding." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 509 (1972). "In the absence of an ongoing enforcement action, *Younger* has no role to play, leaving us with authority, indeed an obligation, to resolve the case." *Winter v. Wolnitzek*, 834 F.3d 681, 688 (6th Cir. 2016).

Even if abstention were warranted when the state proceedings were pending, it was no longer warranted after the state proceedings had concluded—and it is certainly not warranted now. Because "there are no longer any pending state proceedings that could implicate *Younger*," *Pathways*, 329 F.3d at 114, I would vacate the judgment of the district court dismissing Gristina's claims and remand for her claims to be heard.

In reaching this conclusion, I acknowledge some disagreement among the federal appellate courts over whether it is erroneous for a district court to abstain when the state proceeding was pending at the time the federal action was filed but has concluded by the time the district court renders its decision.[3] Several courts have said that "the

---

[3] *Compare Guarino*, 11 F.3d at 1157 n.1 (holding that *Younger* "does not apply to this case" because "the state's *highest* court already had reached its judgment by the time of the district court's hearing"), *with Beltran v. California*, 871 F.2d 777, 782 (9th Cir. 1988) ("Although the state court proceedings were completed by the time the district court granted summary judgment, and an abstention order in this case may result simply

11

proper point of reference" for *Younger* "is the date [the] plaintiff filed his federal complaint," though those statements often appear in cases that do not involve the circumstance of the state proceedings having ended before the district court rendered its decision. *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 777 (1st Cir. 1990).[4] The better view is that a district court errs by abstaining in such a circumstance. Our circuit has implicitly adopted this view by vacating the judgment of dismissal and remanding for further proceedings when the state proceedings ended by the time of the appeal.[5] That holding rejects the idea that the time of the filing of the federal complaint controls— and it surely means that we ought to vacate the judgment of dismissal at this point.

## III

Because *Younger* does not justify the district court's dismissal of the suit, I would address the district court's alternative basis for dismissal: the *Rooker-Feldman* doctrine. The district court erred in relying on *Rooker-Feldman* in this case.

---

in the appellees refiling their federal complaint, this outcome is required by *Younger*.").

[4] *See also Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1250 (8th Cir. 2012); *Liedel v. Juvenile Court of Madison Cnty.*, 891 F.2d 1542, 1546 n.6 (11th Cir. 1990).

[5] *See Pathways*, 329 F.3d at 114 ("[T]he portion of the judgment dismissing Pathways' claim for declaratory relief against the Brookridge Defendants [on the ground of *Younger*] must be vacated."); *see also Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 393 (10th Cir. 2016) ("Though a state court proceeding was ongoing when the federal complaint was filed, the state proceeding terminated while this appeal was pending. In light of this change of circumstances, we vacate the dismissal without prejudice on the equitable claims and remand for further proceedings.").

## A

The district court acknowledged that "Gristina had an appeal pending before the Appellate Division at the time" she commenced her federal suit, but it said that the pending state appeal "does not affect the *Rooker-Feldman* analysis." *Gristina*, 2022 WL 1597732, at *5 (alteration omitted) (quoting *Citibank, N.A. v. Swiatkowski*, No. 12-CV-0196, 2012 WL 542681, at *4 n.7 (E.D.N.Y. Feb. 21, 2012), *abrogated by Hunter v. McMahon*, 75 F.4th 62 (2d Cir. 2023)). That is wrong. "*Rooker-Feldman* applies when 'the losing party in state court filed suit in federal court *after the state proceedings ended*.' When an appeal remains pending in state court, the state proceedings have not ended and *Rooker-Feldman* does not apply." *Hunter*, 75 F.4th at 65 (citation omitted) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)).

Unlike *Younger* abstention, *Rooker-Feldman* implicates the jurisdiction of the district court—and "federal courts assess jurisdiction as of the moment the complaint was filed." *Id.* at 71 (internal quotation marks and alterations omitted). Therefore, because Gristina "filed her federal suit before the state proceedings were over, *Rooker-Feldman* did not deprive the district court of jurisdiction." *Id.* at 65. And "the district court [did] not lose jurisdiction [when] the state proceedings were resolved while the federal suit remained pending." *Id.* at 71 n.11.[6] Accordingly, the district court had jurisdiction to consider Gristina's complaint when it was filed, and the subsequent resolution of the state proceedings

---

[6] *See also Exxon Mobil*, 544 U.S. at 292 ("[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court.").

13

did not divest the district court of that jurisdiction. I would again vacate the judgment of the district court dismissing Gristina's suit and remand for the district court to consider her claims.

**B**

Even if the state proceedings had concluded by the time Gristina filed her federal suit, the district court still would have been incorrect to dismiss it pursuant to the *Rooker-Feldman* doctrine.

Under *Rooker-Feldman*, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). The Supreme Court has "confined" *Rooker-Feldman* "to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries *caused by state-court judgments* rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284 (emphasis added). Similarly, "[o]ur [c]ourt has emphasized that the *Rooker-Feldman* doctrine bars district courts from exercising jurisdiction over otherwise properly adjudicated claims *only* if the plaintiff 'complains of injuries caused by a state court judgment.'" *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022) (alteration omitted) (emphasis added) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

Thus, for *Rooker-Feldman* to apply, the state court judgment itself must be the cause of the plaintiff's injury; it is not enough that the plaintiff's federal claim merely "denies a legal conclusion that a state court has reached in a case to which [s]he was a party." *Exxon Mobil*, 544 U.S. at 293 (quoting *GASH Assocs. v. Village of Rosemont*, 995

14

F.2d 726, 728 (7th Cir. 1993)). "The fact that the state court chose not to remedy [a preexisting] injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment." *Hoblock*, 422 F.3d at 88. If the plaintiff simply brings the same claim in federal court after losing in state court, ordinary preclusion principles may apply, but *Rooker-Feldman* is not implicated.[7] In this way, "'*Rooker-Feldman* is not simply preclusion by another name' but 'applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.'" *Hunter*, 75 F.4th at 68 (quoting *Lance v. Dennis*, 546 U.S. 459, 466 (2006)).

In this case, the district court concluded that "Gristina's alleged injury—her inability to review the sealed transcripts—was certainly caused by Justice Merchan's decision to keep those transcripts sealed." *Gristina*, 2022 WL 1597732, at *5. No, it was not. The transcripts were sealed prior to Merchan's decision, and Merchan's decision did not inflict any injury beyond the preexisting one. Merchan "chose not to remedy the injury," but that "does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment." *Hoblock*, 422 F.3d at 88. Again, *Rooker-Feldman* does not apply simply because a plaintiff's federal claim denies a legal conclusion that a state court has reached. "For *Rooker-Feldman* purposes, we are looking for

---

[7] *See Hoblock*, 422 F.3d at 87-88 ("Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination.").

a '*causal relationship* between the state-court judgment and the injury of which the party complains in federal court,'" *Hunter*, 75 F.4th at 72 (quoting *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007)), and such a relationship is absent here.

To resolve Gristina's federal complaint, a federal district court does not need to act as an appellate court reviewing the state court opinions addressing her motion to unseal. It needs only to decide whether Gristina has a federal constitutional right to access the transcripts. This is not a case in which "the plaintiff complains of injuries caused by a state court judgment," *Hansen*, 52 F.4th at 100 (alteration omitted) (quoting *Hoblock*, 422 F.3d at 85), "seeking what in substance would be appellate review of the state judgment in a United States district court," *Johnson*, 512 U.S. at 1005-06. For this additional reason, *Rooker-Feldman* does not bar Gristina's claims.

The Supreme Court has "warned that the lower courts have at times extended *Rooker-Feldman* 'far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress'[s] conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738.'" *Lance*, 546 U.S. at 464 (quoting *Exxon Mobil*, 544 U.S. at 283). But despite those "efforts to return *Rooker-Feldman* to its modest roots, lawyers continue to invoke the rule and judges continue to dismiss federal actions under it." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 405 (6th Cir. 2020) (Sutton, J., concurring). In fact, "[d]istrict courts should keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply." *Hunter*, 75 F.4th at 68 n.4 (quoting *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021)).

The district court dismissed this case "without prejudice." *Gristina*, 2022 WL 1597732, at *6. If that dismissal were based only on *Younger* abstention—the sole issue the court addresses today—Gristina could undoubtedly file another federal suit seeking to vindicate her alleged right to access the transcripts. There is no dispute that the state proceedings are over *now*, so even if the district court were correct that *Younger* abstention required dismissal of the federal complaint that was filed when the state proceedings were ongoing, there would be no argument that *Younger* abstention barred the new complaint. "Because a dismissal on *Younger* grounds is without prejudice, [Gristina] would presumably be free in this case to re-file the complaint immediately (state court review having now undoubtedly concluded)." *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 32 n.4 (1st Cir. 2004) (citation omitted); *see also Columbian Fin. Corp.*, 811 F.3d at 395 (noting that because "the state proceeding has terminated," if the plaintiff "were to refile its federal complaint, *Younger* would no longer present a jurisdictional hurdle").

That makes the district court's alternative ground for dismissal—*Rooker-Feldman*—relevant. One might suspect that the district court's decision that the federal courts lack jurisdiction to consider Gristina's claims—a holding our court does not address—would have preclusive effect, preventing Gristina from pursuing her federal claims even now that the state proceedings have ended.[8] Fortunately for Gristina, however, "[i]t is a well-established principle of federal law that if an appellate court considers only one of a lower

---

[8] *See Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) ("A jurisdictional disposition is conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court.").

court's alternative bases for its holding, affirming the judgment without reaching the alternative bases, only the basis that is actually considered can have any preclusive effect in subsequent litigation." *In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) (quoting *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 754 (2d Cir. 1996)).[9] Because the court affirms the judgment of the district court on the basis of *Younger* and does not address *Rooker-Feldman*, the district court's *Rooker-Feldman* holding would not preclude a future suit based on the same claims.

\* \* \*

In my view, it is "a waste of time" to dismiss Gristina's action so that she may file a new one. *Maymo-Melendez*, 364 F.3d at 32. I would "vacate [the] dismissal of [her] claims and remand these claims to the district court so that it can reconsider them without the need to abstain now that the state proceedings have ended." *Columbian Fin. Corp.*, 811 F.3d at 395. But today's decision does not follow that course. Instead, it endorses an expansive view of *Younger* abstention that fails to respect the "virtually unflagging obligation" of the federal courts to resolve the cases before us. *Colo. River*, 424 U.S. at 817. I dissent.

---

[9] *See also Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986) ("[I]f an appeal is taken and the appellate court affirms on one ground and disregards the other, there is no collateral estoppel as to the unreviewed ground.").

18